FREDERICK B. TOWNSEND, Appellant, *vs.* A. D. GASH *et al.* Appellees.

*Opinion filed April 22, 1915.*

1. STATE HIGHWAY COMMISSION—*the commission has express power to purchase materials for State aid roads.* The statute appropriating funds to the State Highway Commission for the building of State aid roads, and the Roads and Bridges act of 1913, giving the commission power to let all contracts for the construction of such roads or in a certain event to construct the same through its own agencies, and to perform all other duties prescribed in the act or reasonably inferable therefrom, confer upon the commission full and express power to purchase such road-building materials, tools, implements and machinery as may be needed, from time to time, for such purpose, and, in the discretion of the commission, to estimate and anticipate the needs in that respect and prepare therefor by contracting for materials.

2. SAME—*power to purchase materials for construction not excluded by power to purchase for repair.* The power of the State Highway Commission to purchase materials for the construction of State aid roads is not excluded by the grant of power to purchase materials for the repair of such roads or the grant of power to obtain materials by condemnation of land, nor is such power confined to those instances in which the commission may construct State aid roads through its own agencies.

APPEAL from the Circuit Court of DeKalb county; the Hon. MAZZINI SLUSSER, Judge, presiding.

FAISSLER, FULTON & ROBERTS, and KNAPP & CAMPBELL, (JOHN R. COCHRAN, of counsel,) for appellant.

P. J. LUCEY, Attorney General, GEORGE P. RAMSEY, and DUNCAN & O'CONOR, for appellees.

Mr. JUSTICE WATSON delivered the opinion of the court:

On June 20, 1914, the appellant filed his bill in the circuit court of DeKalb county praying the annulment of a certain contract made by and between the State Highway Commissioners and the Marquette Cement Manufacturing

Company, and also praying for an injunction against said highway commissioners restraining them, and each of them, from purchasing cement or other material for the construction of State aid roads, and also from issuing any order or in any other manner directing the Auditor of Public Accounts to draw his warrants upon the State Treasurer for the payment of any public moneys on account of cement furnished under said contract, or otherwise, for the construction of State aid roads, and that upon final hearing the injunction be made permanent. Later an amended bill was filed by agreement of the parties, and it will be hereinafter called the bill. A demurrer was filed to the bill, and a stipulation was made to the effect the decision of the court on demurrer should be final and be followed by a decree granting the relief prayed or dismissing the bill for want of equity. The demurrer, which was general, was sustained, and thereupon the appellant declined to plead further, and the court entered its decree dismissing the bill for want of equity and giving judgment against the appellant for the costs of suit. An appeal was allowed and perfected and the case taken to the Appellate Court for the Second District. Objection being made that the real party in interest is the State of Illinois and not the highway commissioners, the Appellate Court held the State is a party in interest and ordered the cause transferred to this court, as is provided by law.

But one question is presented for decision, says appellant, and in his brief he thus states the question: Have the State Highway Commissioners the power to purchase materials for the construction of State aid roads? The theory of appellant's bill is the commissioners do not have this power. The circuit court held otherwise. By four assignments of error appellant challenges the correctness of the holding.

Briefly stated, the bill alleges appellant is a citizen and a resident tax-payer of DeKalb county and as such brings

this suit; that the appellees A. D. Gash, S. E. Bradt and James Wilson are the State Highway Commissioners; that said commissioners, assuming to act under and by virtue of the act approved June 27, 1913, commonly known as the Tice Road law, advertised for bids to be submitted to them for the furnishing of the cement required in the construction of all State aid roads in the State during the year 1914; that on April 1, 1914, numerous bids were submitted to said commissioners for the furnishing of said cement, and on April 8 said commissioners without any authority attempted to, and did, award the Marquette Cement Manufacturing Company the contract for the furnishing of the cement required in the construction of State aid roads in ninety-four counties in the State during the year 1914; that subsequent thereto said commissioners executed an instrument in writing purporting to be a contract, obligating the State of Illinois and said commissioners to purchase from said company all the cement required in the construction of State aid roads in said ninety-four counties; that said commissioners have directed the preparation of specifications for the construction of State aid roads, providing therein that the cement required will be furnished by the State at certain prices therein specified, and inviting bids for the construction of State aid roads and for the furnishing of all materials, except cement, required therefor; that the necessary steps have been taken in many of the counties, as provided in said act, for the construction of State aid roads, and that large quantities of cement will be required for the construction of said roads; that said commissioners have publicly advertised in a number of counties in the State for bids to be submitted to them on July 1, 1914, for the construction of State aid roads in said counties; and that on said date said bids will be opened and the contracts awarded for the construction of State aid roads in said counties; that under the specifications for the construction of said roads for which bids are to be submitted

large quantities of cement will be required, and it is the
purpose of said commissioners to let contracts for and re-
quire the construction of State aid roads in numerous coun-
ties throughout the State as soon after July 1 as said con-
tracts can be let and the work of construction begun; that
the value of the cement required for the construction of
State aid roads in said ninety-four counties in the year
1914 will be about $400,000; that it is the purpose of said
commissioners to purchase, on behalf of the State, all of
the cement required in the construction of State aid roads
during the year 1914 and to require the use of the same;
that complainant is advised the said Tice Road law does
not authorize, or purport to authorize, said commissioners
to purchase cement or any other material to be used in the
construction of State aid roads, and the instrument in writ-
ing purporting to be a contract entered into by said com-
missioners is null and void by reason of the lack of power
and authority of the commissioners to enter into said con-
tract, and said commissioners have no power or authority
to purchase cement or bind the State of Illinois to purchase
cement or other material required in the construction of
State aid roads; that said commissioners have stated they
propose to purchase all of the cement required for the con-
struction of State aid roads in the State during the year
1914, and they will, in conformity with the provisions of
the instrument in writing between the commissioners and
the Marquette Cement Manufacturing Company, issue or-
ders to the Auditor of Public Accounts authorizing and di-
recting him to draw warrants upon the State Treasurer for
the payment of all cement so furnished by said Marquette
Cement Manufacturing Company out of the funds of the
State which are derived by taxation on the property of your
orator and of all other tax-payers; that if such orders are
issued and warrants are drawn upon the treasurer the same
will constitute an illegal and unlawful expenditure of the

public funds of the State, to the damage of your orator and of all other tax-payers of the State.

The appellees filed a general demurrer. The grounds of demurrer were: (1) Complainant's bill fails to allege the facts necessary to entitle him to sue in this cause; (2) the commissioners, who are made defendants, are agents of the State, and the State is the real defendant therein and is wrongfully made a defendant thereto; (3) the commissioners have the express power, by virtue of law, to make and enter into the contract alleged in complainant's bill to be null and void; and (4) the bill of complaint is not sufficient, in law or equity, upon which to be granted the relief prayed for.

For a reversal of the decree appellant relies upon the provisions of section 19 of article 4 of the constitution, which, so far as it is to be considered here, reads as follows: "The General Assembly shall never * * * authorize the payment of any claim, or part thereof, hereafter created against the State under any agreement or contract made without express authority of law; and all such unauthorized agreements or contracts shall be null and void." Emphasis is laid upon the word "express," as distinguished from and excluding any implied authority of law. The view of this court is, the distinction between express and implied authority of law is too clearly drawn in the adjudicated cases cited to permit of any confusion, and there is no reason to doubt the sense in which the word "express" is used in the constitutional clause quoted. The power must be express or it does not exist. *United States v. C., St. P., M. & O. Ry. Co.* 151 Fed. Rep. 84.

On the one hand it is claimed the Tice Road law does not constitute "express authority of law" for the acts of the commissioners questioned in this case. By the name used is meant the act of the General Assembly approved June 27, 1913, (the new Road law,) and it is pointed out by appellant that while that act, in terms, authorizes the

State Highway Commissioners (hereinafter referred to as the commissioners) to purchase materials for the repair of roads, it does not explicitly say, if it does at all say, they may purchase materials for the construction of roads; also, that in the preparation of plans, specifications and estimates for the construction of roads the commissioners are authorized to include therein the value of any materials and the fair rental value of any implements, apparatus and machinery suitable for road construction which the commissioners desire should be furnished or supplied by the State. In this connection our attention is called to three enactments of the General Assembly in 1905, being the act creating a State Highway Commission, since superseded by the present commission; the act authorizing the employment of convicts in the manufacture of drain tile, road tile, road tools, vehicles and machinery and preparing materials for building and ballasting roads; and the amendment to the act regulating the employment of convicts so as to provide for furnishing the crushed rock or other road materials manufactured by them, free at the penal or reformatory institution, upon the requisition of the State Highway Commission.

The three acts mentioned are claimed to be constituent parts of a general plan, in connection with the State Highway Commission, whereby the State would have at all times certain road building materials and tools for local use on the order of the commissioners, and that upon the adoption and approval of the Tice Road law the General Assembly had in its consideration such materials and tools rather than such as might be acquired by purchase; also, it is contended that since by the terms of the Tice Road law the commission is given power to acquire lands containing materials suitable for road construction or road repair, the inference it might buy construction materials upon the market is necessarily excluded. It is also pointed out that by direct use of effective words the commission is by

the Tice Road law authorized to purchase materials for repairing and maintaining State aid roads, the conclusion of the appellant being that language equally direct would have been employed if the commission, by any intention of the General Assembly, had been empowered to purchase materials for construction of such roads.

Section 32 of the act (Hurd's Stat. 1913, p. 2120,) is the section giving authority to purchase materials, supplies, etc., for the purpose of keeping State aid roads in repair, and section 134 of the act gives the power of eminent domain for the purpose aforementioned. The legal maxim, *expressio unius est exclusio alterius,* is well supported, if support were needed, by 19 Cyc. 23, and authorities there cited, and it is elementary that highway officers have, in general, only such powers as are conferred by statute. (*Ohio and Mississippi Railway Co. v. People,* 123 Ill. 648.) Many other authorities are brought to our attention and might be cited here to establish and buttress the principles of law and of legal construction laid down in appellant's brief did space permit, but practically the sole question before the trial court and this court was and is, does the law expressly authorize what the commission has done and is doing?—and that question must be determined from a consideration of the law itself, according to the established rules of construction.

The section of the constitution herein above quoted, being section 19 of article 4, declares null and void all contracts and agreements which create a liability against the State without express authority of law. The constitution is the organic law, but it nevertheless is law, and like all other laws it must have both a reasonable and practical interpretation. (*Knickerbocker v. People,* 102 Ill. 218.) An express grant of power or duty to do a particular thing includes the express grant of power to do all that is reasonably necessary to execute that power or duty. *Lewis v. Colgan,* 115 Cal. 529; *City of Chicago v. Stratton,* 162 Ill.

494; *People* v. *Drainage Comrs.* 143 id. 417; *Field* v. *People,* 2 Scam. 79.

Three laws were enacted by the Forty-eighth General Assembly appropriating to the commissioners a total sum of $1,100,000 for building and maintaining State aid roads in the several counties, being, respectively, House Bills 608, 679 and 894, each providing for the Auditor of Public Accounts to draw warrants upon the State Treasurer for the disbursement of the money upon the order of the commission, accompanied by a detailed statement showing the amount expended and the purpose of the expenditure, clearly distinguishing amounts expended for the building from those of maintaining such roads. (Laws of 1913, pp. 41-43.)

The Tice Road law, adopted also by the Forty-eighth General Assembly, is in practical effect a revision of the road laws of the State and is divided into ten articles, 168 sections and many sub-sections. Its title is, "An act to revise the law in relation to roads and bridges." (Hurd's Stat. 1913, p. 2110.) By article 2 of the act a State highway department is created, with commissioners and other officers and agents, and the general powers and duties of the commission are enumerated in twelve sub-sections. We here quote two of them: "(10) Let all contracts for the construction or improvement of State aid roads." "(12) Perform all other duties prescribed in this act or reasonably inferable therefrom." Section 9 of article 4 of the act provides for the payment for State aid roads one-half by the county and one-half by the State, and for the same to be laid out, constructed and improved as is in the act afterwards directed. Section 18 of the same article provides for including in the estimates the value of any materials and the fair rental value of any implements, apparatus and machinery the State may furnish. Section 30 authorizes the commission to construct State aid roads di-

rectly, if, under conditions specified, it cannot contract for the same within the estimate.

We should allow the three appropriation bills above referred to, and the clauses selected from the Road law, to speak for themselves upon the question of express power but for the extended and able argument presented by the appellant upon the exclusion doctrine above referred to, and upon the further contention that sub-section 12, above quoted, is meaningless and without force and adds nothing to the eleven preceding sub-sections,—the appellees, of course, contending for the opposite view.

We are of the view that the statutes appropriating funds to the commission for the building of State aid roads, together with the statute giving the commission power to let all contracts for the construction of such roads, or in a certain event to construct the same through its own agencies, and to perform all other duties prescribed in the act or reasonably inferable therefrom, confer upon the commission full and express power to purchase such road building materials, tools, implements and machinery as may from time to time be needed for the purposes aforesaid, and in their discretion to estimate and anticipate the needs and prepare therefor, as the bill here under consideration shows was done, and to the same extent as if the methods of its procedure in the premises were as definitely prescribed as the same are prescribed in relation to letting contracts for highway construction.

We do not attach controlling importance to the contention of appellant to the effect the commission's powers in regard to supplying road building materials, tools and machinery are limited to those acquired by virtue of the three enactments of 1905, *supra,* and to those acquired by and through the power of eminent domain conferred by the Tice law, because it is conceivable that many varieties of materials, tools and machinery useful in building State aid roads might not be produced at the penal and reformatory

institutions of the State and might not be found obtainable by and through the exercise of the power of eminent domain.

We hold, also, the power to purchase materials for road construction is not excluded by the grant of power to purchase materials for repair of roads or the grant of power to obtain materials by the condemnation of real estate, because to hold otherwise would bring us to the unreasonable conclusion that the commission, by determining, by and through its plans and estimates, the kind of road to be made and the kind of materials to be used therein would find itself under a duty to construct the road in the event a contract therefor could not be secured within the estimate and yet be unable to perform that duty for want of power to purchase the specific materials, assuming the State did not produce the same at its penal and reformatory institutions and that said materials could not be found through the process of the power of eminent-domain.

We would not be understood as limiting the right of purchase to those comparatively rare instances in which the commission will be under a duty to construct the State aid roads directly, for the Tice law in authorizing the State, in the discretion of the commission, to furnish materials for the construction of State aid roads and fix the price to be charged therefor, is without limit and is not confined to materials already on hand. The determination of the kind of materials and the method of their acquirement are by the act confided to the discretion of the commission. There is no contention in the bill that such discretion has been abused or misused.

For the reasons indicated, the decree of the circuit court of DeKalb county must be and is affirmed.

*Decree affirmed.*