40

Arthur Hollender, William D. Fowler, John W. Oswald, E. L. Soper, and Anna Louise Kline, Administratrix of the Estate of Clarence R. Wilson, Deceased, Claimants, *vs.* State of Illinois, Respondent.

*Opinion filed September 12, 1944.*

Warner and Warner, for claimants.

George F. Barrett, Attorney General; C. Arthur Nebel, Assistant Attorney General, for respondent.

Chief Justice Damron delivered the opinion of the court:

This complaint was filed on February 5, 1944, and alleges that the above named claimants were employed by the respondent at the Dixon State Hospital, Dixon, Illinois, as plumbers and steam fitters. Anna Louise Kline appears as claimant as administratrix of the estate of Clarence R. Wilson, deceased.

The claim of each is based on services rendered to the respondent as plumbers and steam fitters, all being members of Local Union No. 411 of the United Association of Journeymen Plumbers and Steam Fitters of the United States and Canada, said local union being located in Dixon, Illinois.

Claimants Arthur Hollender, William D. Fowler, and John W. Oswald seek an award of $400.40 each; E.

L. Soper, claimant, seeks an award of $110.50; and Anna Louise Kline, administratrix of the estate of Clarence R. Wilson, deceased, seeks an award of $223.60.

The complaint alleges that the claimants were for a number of years members in good standing of said local union, and that said union, on May 30, 1942, made an agreement with the contractors of Lee County, Illinois, increasing their members' wages from $1.37½ per hour to $1.70 per hour. The complaint further alleges that a notice was mailed to Rodney H. Brandon, Director of the Department of Public Welfare, a copy of which is attached to said complaint, notifying the said Director of the action of the union in increasing the then prevailing rate. Considerable correspondence was had between the union and various departments of the respondent from the 30th day of May, 1942, to the 1st day of November, 1943, in an effort to have their new wage rate recognized by the respondent. This correspondence is attached to said complaint and identified as Exhibits A to K, inclusive.

The complaint further alleges that all of the claimants from May 30, 1942, to January 1, 1943, received vouchers from the respondent for work performed by each of them at a rate of $1.37½ per hour for that period. Vouchers for work performed were accepted by each claimant and cashed.

The complaint further alleges that on and after January 1, 1943, the respondent recognized the increased rate of $1.70 per hour, and subsequent to that date has paid the members of said local union at that hourly rate.

The respondent files a motion to dismiss the complaint for the reason the complaint shows on its face that claimants accepted and cashed warrants for the services rendered and that no legal recovery for further or addi-

tional salary can be had under the law, and cites Section 19, Article 4 of the Constitution, 1870; *Par. 145, subsection 3, Chapter 127,* Ill. Rev. Stat., in support of said motion.

The claimants in their statement, brief and argument opposing the respondent's motion to dismiss, contend that the claimants are not seeking extra compensation for work already performed, but the balance of the wages which they were entitled to at the time the services were rendered and for which they believed they were working at all times subsequent to May 30, 1942. They further contend that the union wage scale of $1.70 per hour fixed on May 30, 1942, and recognized by the Contractors of Lee and Whiteside County and of the City of Oregon, was recognized as the general prevailing rate per diem in the locality of the Dixon State Hospital, where claimants were employed, and consequently the rate which public policy, as expressly stated by the legislature, required the State of Illinois to pay, and cite *Townsend* vs. *Gash,* 267 Ill. 578; and Section 1 of an Act relating to wages of laborers, mechanics and other workmen employed under contracts for public work, *Chapter 48, par. 39s p. Ill. Rev. Stat.*

Upon a full consideration of the record we must conclude that these claimants are attempting to collect additional wages for work already performed under the action of their local union of May 30, 1942, increasing their rate of pay, and which they attempt to show is binding on the respondent. We cannot agree with this contention. This increase in hourly wage rate did not arise from a negotiated contract with the respondent but was an action taken solely on the behalf of the local union for the benefit of its members and while it is probably true, as alleged in the complaint, the contractors in Lee

County, Illinois recognized the $1.70 per hour as the prevailing rate, and no doubt recognized it under any contracts negotiated between the union and contractors after the rate was raised, yet the complaint does not allege that the State of Illinois entered into any binding contract through any of its officers until the 1st day of January, 1943.

This court, under the law as it now exists, is precluded from making an award to these claimants under this record. Section 9, subsection 3 of "An Act in relation to State Finance" (Chap. 127, Ill. Rev. Stat., Sec. 145), provides:

"Accounts paid from appropriations for personal service of any officer or employee of the State, either temporary or regular, shall be considered as the full payment for all services rendered between the dates specified in the payroll or other vouchers and no additional sum shall be paid to such officer or employee from any lump appropriation, appropriation for extra help or other purpose of any accumulated balances in specific appropriations, which payments would constitute in fact an additional payment for work already performed, and for which remuneration had already been paid."

Under this provision of the Statute, it was held in *Mills* vs. *State,* 9 C. C. R. 69, that a claimant cannot accept warrants purported to cover the full amount due him for services during stated periods, and thereafter, when his active service has ended, obtain an award from the State for an additional amount for those periods for which he had apparently been paid for services in full.

In *Broderic, et al,* vs. *State,* 9 C. C. R. 461, the Court held:

"Claimants herein in each instance throughout their terms of service received regular monthly salary warrants from the State of Illinois and accepted same from month to month as received. Regardless of any rights which they may have had to have demanded and received salary in any other amounts, claimants accepted said monthly warrants regularly through their term of service."

The court held in that case that claimants, having accepted the monthly warrants, were barred by the Statute from obtaining any further payments of salary. The claims were denied. *Klapman, et al,* vs *State,* No. 3210; *Goldsen* vs. *State,* 12 C. C. R. 26.

It appearing from the complaint that the claimants accepted payment for the services performed, it is clear that they are now barred from recovering additional compensation for these services.

We hold that the decisions of this court as cited are controlling in the instant claim and that the claimants are, and each of them is barred from securing an award.

The motion of the Attorney General is allowed and the complaint is dismissed.