(No. 65052.—)

THE LAKE COUNTY BOARD OF REVIEW *et al.*, Appellees, v. THE PROPERTY TAX APPEAL BOARD OF THE STATE OF ILLINOIS *et al.* (Marriott Corporation, Appellant).

*Opinion filed January 25, 1988.*

Powell & Reilly, P.C., and Kevin M. Forde, Ltd., both of Chicago (Charles A. Powell, Paul J. Reilly, Kevin M. Forde, Katrina Veerhusen, and Janice R. Forde, of counsel), for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Helen S. Rozenberg and Ernest Y. Ling, Assistant State's Attorneys, of counsel), for appellee Lake County Board of Review.

Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago (Jerome N. Robbins, Jennifer A. Keller and Bruce A. Slivnick, of counsel), for appellee Town of Warren, *et al.*

James A. Rooney, of Nisen, Elliott & Meier, and Dean H. Bilton, of Flanagan, Bilton & Brannigan, all of Chicago, for *amicus curiae* Chicago Bar Association.

JUSTICE CUNNINGHAM delivered the opinion of the court:

The Illinois Property Tax Appeal Board (Appeal Board) ordered a reduction in the 1981 real estate tax assessment of the Great America Theme Park, an amusement park which is located in Gurnee and which was owned in 1981 through 1983 by the Marriott Corporation (Marriott). Pursuant to section 3—103 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 3—103), the Lake County board of review (board of review) sought administrative review of the Appeal Board decision. The circuit court (in a decision in which the interested taxing districts were granted leave to intervene) reversed the Appeal Board's reduction, finding that the 1981 assessment values of the board of review had been correct. The appellate court, in *Lake County Board of Review v. Property Tax Appeal Board* (1986), 140 Ill.

App. 3d 1042, reversed the circuit court, finding that the Appeal Board had correctly ordered a reduction in the assessed value. The appellate court remanded the matter to the circuit court with directions to reinstate the decision of the Appeal Board and to grant other consistent, appropriate relief.

Marriott filed a motion for entry of judgment consistent with the appellate court's mandate, praying that the circuit court order the Lake County collector (collector) to issue a refund check. On April 7, 1986, the circuit court entered an order relating to Marriott's motion, the interpretation of which order the parties dispute, but which indisputably included an entry of judgment in favor of Marriott and against the collector, and also included a recitation of the "correct amount of the refund." On May 16, 1986, the collector notified Marriott that he had "complied" with the April 7 order by offsetting the amount of the refund against additional taxes due on the property as a result of a May 7, 1986, Appeal Board decision increasing the assessed value of the property for 1982 and 1983.

Marriott then filed a motion to enforce the April 7, 1986, order, contending that the collector's actions did not comply with that order. The circuit court denied the motion, finding that the collector's actions were a reasonable means of refunding the 1981 funds and simultaneously collecting the 1982 and 1983 funds. The appellate court upheld the circuit court's decision. (152 Ill. App. 3d 1093.) Pursuant to Supreme Court Rule 315 (107 Ill. 2d R. 315), we granted Marriott's petition for leave to appeal.

On appeal, Marriott contends that in utilizing the collection procedure outlined above the collector unlawfully deviated from statutorily specified refund and collection procedures. Marriott relies in part upon section 111.4 of the Revenue Act of 1939 (Ill. Rev. Stat. 1985, ch. 120,

par. 592.4), which states that "refunds" shall be given if the Appeal Board determines that taxes have been extended and paid upon an unauthorized assessment. Marriott argues that the term "refund," though not statutorily defined, does not encompass a tax "offset" such as was utilized herein. The board of review responds that the term "refund," if given a broad construction, fairly encompasses the "offsetting" procedure which the collector used in this case.

Section 111.4 of the Revenue Act of 1939 (Ill. Rev. Stat. 1985, ch. 120, par. 592.4) provides in pertinent part that "any taxes extended upon such unauthorized assessment or part thereof shall be abated, or, if already paid, shall be refunded with interest as provided in Section 194." Section 194 in turn provides that "[r]efunds *** shall be made by the collector in accordance with the final orders of the Property Tax Appeal Board or the court ***." (Ill. Rev. Stat. 1985, ch. 120, par. 675.) Nowhere in section 111.4, section 194, or any other provision of the Revenue Act is the term "refund" defined. Accordingly, that term must be given its ordinary and popularly understood meaning. (*Niven v. Siqueira* (1985), 109 Ill. 2d 357, 366.) Moreover, the term must be given its full meaning, not the narrowest meaning of which it is susceptible. *Mahon v. Nudelman* (1941), 377 Ill. 331, 355.

The Town of Warren, an intervenor herein, citing Webster's Ninth New Collegiate Dictionary 991 (9th ed. 1983), states that to "refund" is popularly understood to mean "to return [money] in restitution, repayment or balancing of accounts." The Town of Warren argues that what the collector did in offsetting a refund due for 1981 against additional taxes due for 1982 and 1983, was simply a "balancing of accounts." This, the Town of Warren and the board of review argue, was one of alternative potential means of "refunding" the amount of the over-

payment. They further contend that by utilizing the instant procedure the collector contemporaneously fulfilled both his duty to issue the 1981 refund and his duty to collect the additional 1982-83 taxes.

Marriott notes that the definition of "refund" quoted by the Town of Warren is the second definition listed in the cited dictionary, the first being "to give or put back [money]." Marriott also notes that the relevant definition of "refund" appearing in Black's Law Dictionary 1152 (5th ed. 1979) is "to repay or restore; to return money in restitution or repayment."

The verb "refund" undoubtedly is most commonly used in reference to the issuance of either a check or cash. However, we agree with the Town of Warren and the board of review that the term, unless construed very narrowly, fairly encompasses the offsetting of the county's accrued obligation to pay Marriott the amount of Marriott's 1981 overpayment against Marriott's accrued obligation to pay additional taxes for 1982 and 1983 on the identical property. In this regard, the parties dispute at length whether the respective obligations of Marriott and the county had accrued at the time of the setoff. Marriott argues that at the time of the setoff the county's obligation to issue a refund was current but that, since Marriott's additional tax obligation was not yet delinquent, Marriott's obligation was still a future liability. Marriott argues that the offsetting of a current entitlement to a refund against a future tax liability can hardly be deemed the issuance of a refund. The board of review responds that Marriott's obligation, though not yet delinquent, had in fact accrued at the time of the setoff. Alternatively, the board of review argues that both the refund entitlement and the additional 1982-83 tax liability were unaccrued at the time of the setoff but that they were both to accrue contemporaneously during June 1986. In this regard the board of review argues that dur-

ing June 1986 the full tax bill for the increased 1982-83 assessment would have been required to be paid. Pointing to section 194 of the Revenue Act (Ill. Rev. Stat. 1985, ch. 120, par. 675) (which provides in part for the payment of tax refunds out of a "protest fund"), the Town of Warren and the board of review argue that since at the time of the circuit court's refund order the protest fund from previous years' taxes was depleted, the county was not required to pay the refund until June 1986, when the protest fund would be replenished.

We are convinced that both the obligation of the county and the obligation of Marriott had accrued at the time of the setoff, although as of that date neither party was obligated to immediately submit payment to the other party, and although the respective payments might not otherwise have been made contemporaneously. Both obligations had been finally determined. The county's obligation had been finally determined by the circuit court order directing a refund, and Marriott's obligation had been finally determined by the Appeal Board. (See section 111.4 of the Revenue Act (Ill. Rev. Stat. 1985, ch. 120, par. 592.4), stating that decisions of the Appeal Board shall be binding upon an appellant and officials of government.) We note that neither the circuit court's order directing a refund nor the Appeal Board's order increasing the 1982-83 assessment was stayed.

If the collector had offset the refund obligation against an unaccrued obligation of Marriott, then arguably the procedure could only be deemed the issuance of a "credit." However, since the collector was offsetting the amount which the county owed Marriott against the accrued obligation of Marriott on the same property, its actions can fairly be deemed the "refunding" of the overpayment. Consequently, we find that the collector complied with his statutory obligation to refund the amount of the overpayment.

The statutory duty to issue the refund, however, is not the only statutory duty which Marriott asserts that the collector violated. Marriott argues that the statutorily prescribed collection process requires the county clerk to, *inter alia*, receive valid and unsatisfied certificates of levy, calculate tax rates, and extend taxes by parcel. Marriott notes in particular sections 162 and 164 of the Revenue Act (Ill. Rev. Stat. 1985, ch. 120, pars. 643, 645). Section 162 addresses the duties of the county clerk to estimate and determine the appropriate tax rate. Section 164 addresses situations in which the county clerk either must or may extend taxes for various taxing bodies in one total rather than individually. We are convinced, however, that neither these provisions nor any other provisions in the Revenue Act explicitly govern the role, if any, which the county clerk is to play in issuing an amended tax bill following an increased assessment. Rather, the provisions cited by Marriott on this issue address the role of the county clerk in carrying out the routine annual practice of calculating the tax rate, preparing the collector's books and delivering those books (containing assessments of property throughout the county, together with the applicable tax rates) to the collector. The provisions cited by Marriott which address the collector's annual application for judgment for taxes paid under protest and the procedure for selling property to obtain delinquent taxes also do not address the issue of whether, in the instant situation, funds could be set off or whether they had to be repaid and a contemporaneous tax bill issued for separate years' obligations.

Since no provision of the Revenue Act either prohibits or explicitly prescribes the particular offsetting procedure which the collector utilized in this case, in determining the propriety of the procedure we must decide whether (a) the legislature has provided sufficient standards to control the collection activities at issue here, (b)

the collector exceeded the bounds of those standards, and (c) Marriott was denied due process of law by the particular collection procedure utilized.

The General Assembly has placed upon the collector the duty to collect taxes (section 190 of the Revenue Act (Ill. Rev. Stat. 1985, ch. 120, par. 671)), and the treasurers of all counties have been designated as the collectors (Ill. Rev. Stat. 1985, ch. 120, par. 657). The duties of the county treasurer include the duty to receive and keep "money and funds authorized by law to be paid to him, and disburse the same pursuant to law." Ill. Rev. Stat. 1985, ch. 36, par. 4.

We find these directives sufficient to constitute a lawful delegation of authority to an administrative agency. The legislature may establish broad guidelines, and the details of application of these principles to specific instances may then be determined by an administrative body. (See *Chirikos v. Yellow Cab Co.* (1980), 87 Ill. App. 3d 569, 575.) Reasonable discretion as to the manner of executing a law is often necessarily given to administrative officers. *Department of Finance v. Cohen* (1938), 369 Ill. 510.

We also find that the collector acted within the scope of his delegated authority. It is a well-established principle in Illinois that the powers of an administrative officer are purely statutory, and that such officer has only such powers as are given him by statute. (*Hesseltine v. State Athletic Comm'n* (1955), 6 Ill. 2d 129; *People ex rel. Polen v. Hoehler* (1950), 405 Ill. 2d 322.) However, an express grant of power or duty to an administrative officer carries with it the grant of power to do all that is reasonably necessary to execute that power or duty. (*Townsend v. Gash* (1915), 267 Ill. 578, 584.) Moreover, we have noted in other contexts that the word "necessary" is a word of great flexibility and may mean "absolutely necessary," "indispensable," or, less restrictively,

"expedient" or "reasonably convenient." (See *Illinois Bell Telephone Co. v. Fox* (1949), 402 Ill. 617, 631.) Further, wide latitude must be given to administrative agencies in fulfilling their duties. (See *James v. Cook County Department of Public Aid* (1970), 126 Ill. App. 2d 75, 80 (citing *People ex rel. Baker v. Strautz* (1944), 386 Ill. 360, and *South Carolina State Highway Department v. Barnwell Brothers* (1938), 303 U.S. 177, 82 L. Ed. 734, 58 S. Ct. 510).) We agree with the statement in *City of Chicago v. Town Underground Theatre, Inc.* (1973), 9 Ill. App. 3d 930, 936, that administrative officers may validly exercise discretion to accomplish in detail what is legislatively authorized in general terms. We agree with the appellate court that the collection activity involved herein was a reasonable means of accomplishing the above-stated broad statutory directives for the collection of property taxes.

We next turn to Marriott's contention that the collection procedure utilized in this case violates Marriott's right to due process of law. In this regard Marriott asserts wrongful deprivation of what it considers two distinct property interests: its 1981 refund entitlement, and its right to object to the additional taxes imposed following the 1982-83 assessment increase.

Marriott attempts to analogize the offsetting procedure herein to the wrongful confiscation of property by the State. However, we have previously concluded that the collector did not simply refuse to refund the overpayment. Rather, he refunded the overpayment by offsetting it against an additional accrued liability. Marriott was not wrongfully deprived of the refund entitlement if the liability being offset was legitimate. We thus turn to Marriott's second due process argument, namely, that Marriott was not given a meaningful opportunity to dispute the 1982-83 increased liability.

Marriott does not argue that it has been deprived of an opportunity to contest the amount of the assessment. In fact, it appears from the record that Marriott is actively contesting that assessment. Rather, Marriott argues that because the amount of the additional taxes due for 1982 and 1983 was offset against the refund for 1981, Marriott was not given the opportunity to pay the additional taxes under protest. Marriott contends that because it could not pay the additional taxes under protest, the collector did not include such taxes in its annual application for judgment, and that therefore the statutorily prescribed procedures for contesting the tax rate could not be followed. In Marriott's view, Marriott was denied any meaningful opportunity to contest the applicable tax rate. We disagree.

There is no statutorily authorized basis for applying a different tax rate to the additional 1982-83 taxes than to the 1982-83 taxes on the property as originally assessed for those years. It follows that any basis for contesting the tax rate applied to the incremental increase in the assessment was equally applicable to the tax rate applied to the original assessment. The tax rate is applied equally to all parcels which are subject to the same taxing bodies, and once the tax rate is determined for a given year, there is no statutorily prescribed mechanism for altering the tax rate based upon the Appeal Board's (or circuit court's) reassessments of particular parcels of property within that given year.

Marriott does not contend that it was denied an opportunity to pay its initial 1982-83 tax extensions under protest, or to raise objections to the tax rate applied to those assessments. Marriott evidently had its opportunity to file rate objections to the 1982 and 1983 tax rates, and apparently either declined to do so or the court found the objections meritless. Due process requires that Marriott be given a meaningful opportunity

to be heard before being finally deprived of property (see *Dietman v. Hunter* (1955), 5 Ill. 2d 486, 489), but Marriott has already had such an opportunity. Due process does not dictate that Marriott be given a second chance to assert tax rate objections which it previously either declined to make or made unpersuasively.

Marriott does not assert, and we see no basis for asserting, that the increase in the 1982-83 assessments was of such magnitude (in proportion to the original assessments) that its need or incentive to contest the tax rate increased markedly. Moreover, an evaluation of procedural due process includes considering not only the private interests at stake but also the government interests at stake (*Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 542-43, 546, 84 L. Ed. 2d 494, 504, 506-07, 105 S. Ct. 1487, 1494, 1495-96) and the governmental interest in efficiently determining the tax rate and applying it to assessments fully justifies denying an additional opportunity to raise the same challenges to a particular year's rate that could previously have been made. It would be utterly unworkable to permit tax rate protests every time an assessment increase occurred after the year's tax rate had been determined. The resulting stream of belated challenges could bring repeated revisions of the rate throughout the year, along with the repeated necessity of issuing modified tax bills to property owners throughout the county.

We note also that Marriott has not established any lack of an opportunity to question the collector's arithmetic in applying the tax rate to the assessment increase. Moreover, the record indicates that in the presence of the circuit judge the collector's attorney offered to explain the calculations, but Marriott declined the offer. Thus, we are not faced with the situation where a taxpayer has had a tax refund offset based upon an erro-

neous calculation and then been denied an opportunity to have the error corrected.

For the above reasons, we find no impropriety in the procedure utilized by the collector to contemporaneously refund moneys owed to Marriott and collect moneys owed from Marriott on the same property. Therefore, we affirm the decision of the appellate court.

*Affirmed.*