CHEMED CORPORATION, INC., Plaintiff-Appellee, v. THE STATE OF ILLINOIS, Department of Revenue, Defendant-Appellant.

Fourth District   No. 4—88—0528

Opinion filed July 27, 1989.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Ann Plunkett-Sheldon, Assistant Attorney General, of Chicago, of counsel), for appellant.

Schain, Firsel & Burney, Ltd., of Chicago (Brian L. Wolfberg, Robert W. Fioretti, and Melissa J. Wilson, of counsel), for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff filed a complaint for administrative review in the circuit court of Sangamon County seeking reversal of an administrative decision of the Department of Revenue which denied plaintiff a refund of $115,223 in municipal retailers' occupational tax (MROT) and $115,224 in regional transportation authority retailers' occupational tax (RTA) for the period of January 1, 1982, to April 30, 1985. The trial court reversed the administrative decision and found sections 270.115(b)(3) and 320.115(b)(3) of the Illinois Administrative Code (Code) (86 Ill. Adm. Code §§270.115(b)(3), 320.115(b)(3) (1985)) are invalid because they are (1) outside the scope of the corresponding MROT and RTA acts and (2) unreasonable, arbitrary and capricious regulations. The court ordered defendant to issue plaintiff a tax refund in the amount of $230,447, plus interest. Defendant appeals and we reverse.

The following are stipulated facts: Plaintiff Chemed Corporation, Inc. (Chemed), is a Delaware Corporation authorized to do business in Illinois. Defendant Illinois Department of Revenue (Department) is an administrative body charged by law with the duty of administrating the Illinois Retailers' Occupation Tax Act (ROT) (Ill. Rev. Stat. 1987, ch. 120, par. 441), the RTA in the Regional Transportation Authority Act (Ill. Rev. Stat. 1987, ch. 111⅔, par. 704.03(e)) and the MROT in the Illinois Municipal Code (Ill. Rev. Stat. 1987, ch. 24, par. 8—11—1).

During the period January 1, 1982, through April 30, 1985, Che-

med engaged in business in Illinois through several unincorporated divisions, including DuBois Chemicals (DuBois), Vestal Laboratories, and Cambridge Scientific Industries. The receipts that are the basis of the tax assessed and which form the basis for this action were generated by DuBois sales only.

Through DuBois, Chemed manufactures and sells chemical cleaning compounds, coating compounds, specialty lubricants, water treatment chemicals, and floor care products. DuBois is engaged in retail and wholesale sales. Some of DuBois' Illinois customers who use DuBois products are subject to use tax while others are exempt. DuBois operates through two subdivisions, DuBois Industrial Chemicals (Industrial) and DuBois Institutional Chemicals (Institutional). Both are headquartered in and have their principal place of business in Cincinnati, Ohio. Industrial offers approximately 600 products and Institutional offers approximately 150 products.

Industrial and Institutional conduct business in Illinois through approximately 70 sales representatives who live throughout the State of Illinois and make personal calls on DuBois' Illinois customers. DuBois does not have a sales office in Illinois and its sales representatives are not provided office facilities within Illinois. The sales representatives are compensated on a commission basis and are responsible for paying all expenses incurred in the course of business.

An inventory of DuBois products was maintained during the audit period at a public warehouse, LaGrou Motor Service, Inc. (LaGrou), located in Chicago, Illinois. Other than offering warehousing services, LaGrou is in no way affiliated with Chemed. Chemed has no employees located at LaGrou. Chemed stocks approximately 250 different DuBois products (or only approximately one-third of the total number of DuBois products available) at the LaGrou warehouse. All products, the sale of which are at issue in this case, were manufactured outside Illinois, generally at the DuBois manufacturing facility in Sharonville, Ohio. The products were shipped by common carrier to LaGrou. Inventories at LaGrou were restocked an average of three times per week during the audit period.

Chemed markets its products in Illinois by one of four methods. First, direct sales are primarily generated in Illinois through the DuBois sales representatives who personally call on established and prospective customers. Orders are generally received verbally without the preparation of a formal purchase order. Sales representatives telephone the orders to Cincinnati, Ohio, for approval and processing. Prices for all products are set in Cincinnati, Ohio. Sales representatives have no authority to bind Chemed to any order. Once an order is

accepted, delivery may come from inventories located at the LaGrou warehouse as well as out-of-State locations. Second, sales made to certain large customers are consummated through a bidding procedure whereby a DuBois employee located in Cincinnati, Ohio, prepares a bid based upon customer specifications. Once the bid is accepted, products are delivered to the customer from both the LaGrou warehouse or from other locations outside of Illinois. Third, sales proposals are sometimes submitted by DuBois to prospective customers. All proposals are prepared in Cincinnati for submission to prospective customers. Contracts are negotiated and accepted in Cincinnati, Ohio. Deliveries pursuant to this arrangement may come from the LaGrou warehouse as well as out-of-State locations. Finally, sales may be made via a national account. All national accounts are administered from Cincinnati, Ohio. The master contract is negotiated out of the DuBois office in Cincinnati, Ohio. Sales representatives receive implementing orders that must be forwarded to Cincinnati, Ohio, for approval. Products delivered pursuant to these contracts may come from both inventories located at the LaGrou warehouse as well as out-of-State locations.

After orders are accepted in Cincinnati, Ohio, Chemed's computer system generates an invoice and a bill of lading. The customers remit payments of their outstanding account balances to a lockbox maintained at the Fifth-Third Bank located in Cincinnati, Ohio. Occasionally, a customer may tender payment to a sales representative who then forwards the payment to the Cincinnati headquarters or lockbox.

When a decision is made in Cincinnati to ship products located at the LaGrou warehouse, bills of lading prepared in Cincinnati, Ohio, are transmitted to LaGrou with instructions to deliver the ordered products to the Illinois customers. All decisions regarding the source of the products shipped by Chemed to Illinois customers are made in Cincinnati, Ohio, based on factors such as aggregate shipping costs, size of shipment, and availability of goods at various inventory locations. All orders of 10,000 pounds or more are shipped directly from DuBois' manufacturing facility in Sharonville, Ohio, as are items not stocked at the LaGrou warehouse. Approximately 59% of DuBois' Illinois sales were shipped from the LaGrou warehouse during the period of January 1, 1982, through April 30, 1985. Deliveries made from the LaGrou public warehouse constitute the basis for the claimed erroneous payments of MROT and RTA.

Chemed timely filed combined sales, use, occupation, and transit tax returns with the Department for the period January 1, 1982, through April 30, 1985, reported taxes payable on each return, and

paid the taxes so reported. An audit was conducted by the Illinois Department of Revenue for the period of January 1, 1982, through December 31, 1984. As a result of such audit, the Department determined that additional RTA and MROT were due. On or about May 30, 1985, Chemed filed an amended tax return reflecting the additional taxes and interest the Department declared due for the audit period. Thereafter, Chemed filed two claims for refund: (1) a claim for MROT in the amount of $138,908 and (2) a claim for RTA in the amount of $138,909. Both claims were based on Chemed's sales where orders were accepted and approved at Chemed's place of business in Cincinnati, Ohio, but filled with products located at the LaGrou warehouse in Chicago. Chemed's claims were denied in part on October 25, 1985, via a final administrative decision of the Department of Revenue. Chemed was awarded only a partial refund and was held liable for $115,223 in MROT and $115,224 in RTA for the audit period.

On June 26, 1987, Chemed filed a complaint for administrative review in the circuit court of Sangamon County. The trial court reversed the administrative decision of the Department and held the administrative regulations (86 Ill. Adm. Code §§270.115, 320.115 (1985)) were unreasonable, arbitrary and capricious, and outside the scope of their respective governing acts. (Ill. Rev. Stat. 1987, ch. 24, par. 8—11—6; Ill. Rev. Stat. 1987, ch. 111²/₃, par. 704.03(e).) The Department filed its notice of appeal on July 18, 1988.

The claimed erroneous tax payments in this case were made by Chemed pursuant to the MROT and RTA acts. The MROT and RTA acts impose occupational taxes upon persons "engaged in the business of selling tangible personal property at retail in the municipality" (MROT) or "metropolitan region" (RTA). (Ill. Rev. Stat. 1987, ch. 24, par. 8—11—1; Ill. Rev. Stat. 1987, ch.111²/₃, par. 704.03(e).) The Department regulations which determine jurisdiction under the MROT and RTA acts are contained respectively in sections 270.115 and 320.115 of the Code. (86 Ill. Adm. Code §§270.115, 320.115 (1985).) Hereinafter, citations will be made only to the regulation governing the MROT (86 Ill. Adm. Code §270.115(b)(3)) since, for purposes of this appeal, the scope of that regulation is virtually identical to that of the RTA regulation (86 Ill. Adm. Code §320.115(b)(3)). Relevant portions of the MROT regulation pertaining to jurisdictional questions are reprinted as follows:

"a) Mere Solicitation of Orders Not Doing Business

1) For a seller to incur Municipal Retailers' Occupation Tax liability in a given municipality, the sale must be made in the course of such seller's engaging in the retail business within

such municipality. *In other words, enough of the selling activity must occur within the municipality to justify concluding that the seller is engaged in business within the municipality with respect to that sale.*

\* \* \*

b) Seller's Acceptance of Order

1) *Without attempting to anticipate every kind of fact situation that may arise in this connection, it is the Department's opinion, that the seller's acceptance of the purchase order or other contracting action in the making of the sales contract is the most important single factor in the occupation of selling.*

\* \* \*

3) *Regardless of the place at which the purchase order is accepted, where tangible personal property is located within a municipality at the time of its sale (or is subsequently produced in Illinois), then delivered in Illinois to the purchaser, and no other municipality or county in this State would receive or would have the power to impose Municipal or County Retailers' Occupation Tax with respect to such sale, the place where the property is located at the time of the sale (or subsequent production in Illinois) will determine where the seller is engaged in business for Municipal Retailers' Occupation Tax purposes with respect to such sale.*

c) Some Considerations Which Are Not Controlling

\* \* \*

2) The point at which the tangible personal property will be used or consumed and the place at which the purchaser resides are also immaterial in determining whether or not the seller incurs Municipal Retailers' Occupation Tax liability. *Furthermore, the place at which the technical sale occurs (i.e., the place at which title passes) is not a decisive consideration since the phrase in the municipality in the Municipal Retailers' Occupation Tax Act refers only to the location of the occupation of selling that is being taxed and not to the place where sales may be made.*" (Emphasis added.) 86 Ill. Adm. Code §§270.115(a) through (c) (1985).

The Department denied Chemed's claim for credit for taxes paid under the MROT and RTA acts. On review before an administrative law judge (ALJ), Chemed complained section 270.115(b)(3) is unconstitutional because it violates interstate commerce, goes beyond the scope of the governing statute, and is void for vagueness. In his rec-

ommendation, the ALJ indicated he found these arguments persuasive, but as an administrative body refused to determine the constitutionality of the law administered. (*United States v. Kissinger* (3d Cir. 1958), 250 F.2d 940.) Since no Illinois court had interpreted section 270.115(b)(3), the ALJ found that section controlled the application of MROT and RTA taxes.

In addition, the ALJ determined the majority of transactions at issue were so-called national accounts, and any activity which took place in Illinois was limited to warehousing. The ALJ found "that in accordance with Section 270.115(b)(3), the location of the designated goods in the city of Chicago is sufficient to support the imposition of the applicable [MROT] and [RTA]." The Department then issued a final order denying Chemed full reimbursement of the MROT and RTA paid. The trial court reversed the administrative decision and declared sections 270.115(b)(3) and 320.115(b)(3) invalid.

■■ ■ An administrative agency derives its power to act solely from the statute by which it was created. Agency action which exceeds its authority is void. (*Department of Revenue v. Smith* (1986), 150 Ill. App. 3d 1039, 501 N.E.2d 1370.) However, an agency charged with enforcing a statute is given inherent authority and wide latitude to adopt regulations or policies reasonably necessary to perform the agency's statutory duty. (*Lake County Board of Review v. Property Tax Appeal Board* (1988), 119 Ill. 2d 419, 428, 519 N.E.2d 459, 463; Ill. Rev. Stat. 1987, ch. 120, par. 451.) Administrative regulations have the force of law and are construed under the same standards which govern the construction of statutes. (*Northern Illinois Automobile Wreckers & Rebuilders Association v. Dixon* (1979), 75 Ill. 2d 53, 387 N.E.2d 320, *cert. denied* (1979), 444 U.S. 844, 62 L. Ed. 2d 57, 100 S. Ct. 87.) A court should not set aside agency policy merely because that policy is deemed unwise or inappropriate. (*Oak Liquors, Inc. v. Zagel* (1980), 90 Ill. App. 3d 379, 413 N.E.2d 56.) The regulations which enable the agency to execute its duties enjoy a presumption of validity. *Acker v. Department of Revenue* (1983), 116 Ill. App. 3d 1080, 452 N.E.2d 798.

■■ In *Oak Liquors*, the court recognized the general principle that "taxing statutes are to be strictly construed against the government and in favor of the taxpayer." (*Oak Liquors*, 90 Ill. App. 3d at 381-82, 413 N.E.2d at 59.) Accordingly, the court reasoned that Department regulations enacted pursuant to a taxing statute cannot effectively broaden or limit the tax imposition authorized by the statute. (*Oak Liquors*, 90 Ill. App. 3d 379, 413 N.E.2d 56; *Terrace Carpet Co. v. Department of Revenue* (1977), 46 Ill. App. 3d 84, 360 N.E.2d 153;

*Ex-Cell-O Corp. v. McKibbin* (1943), 383 Ill. 316, 50 N.E.2d 505.) The power to make the assessment must essentially be found within the governing statute. *Terrace Carpet Co.*, 46 Ill. App. 3d 84, 360 N.E.2d 153.

■ The ultimate question on appeal is whether it was error for the trial court to reverse the final administrative decision of the Department while declaring invalid sections 270.115(b)(3) and 320.115(b)(3) of the Department regulations. To answer this question, we must first determine whether the Department regulations governing taxation under the MROT and RTA acts, respectively, are within the scope of those acts. Both acts (like the State Retailers' Occupation Tax Act (ROT)) impose a tax "upon all persons engaged in the business of selling tangible personal property at retail" either in the municipality or in the metropolitan region. (Ill. Rev. Stat. 1987, ch. 24, par. 8—11—1; Ill. Rev. Stat. 1987, ch. 111⅔, par. 704.03(e).) In other words, a person's local tax liability is determined by whether or not he is *engaged in the business of retail selling.*

■ ■ The function of an appellate court when interpreting and construing statutes is to ascertain and give effect to the legislature's intent in enacting the statute. (*Department of Revenue v. Smith* (1986), 150 Ill. App. 3d 1039, 501 N.E.2d 1370.) The statutory language must be examined and the court must attempt to discern the statute's objective and the problems it sought to remedy. (*City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 473 N.E.2d 1313.) A statutory term not specifically defined must be given its ordinary and popularly understood meaning, in light of the statute's purpose. (*Niven v. Siqueira* (1985), 109 Ill. 2d 357, 487 N.E.2d 937.) Moreover, the term must be given its full meaning, not the narrowest possible meaning. *Lake County Board of Review v. Property Tax Appeal Board* (1988), 119 Ill. 2d 419, 519 N.E.2d 459.

■ None of the statutes which impose a tax on the operation of a business (MROT, RTA, or ROT) provide a definition of the term "engaged in the business of selling tangible personal property at retail" in Illinois. Similarly, the courts have not provided an exact definition, but have declared the mere solicitation of purchase orders by agents without the authority to bind the corporation does not constitute doing business within the State. *Ex-Cell-O*, 383 Ill. 316, 50 N.E.2d 505; *Automatic Voting Machine Corp. v. Daley* (1951), 409 Ill. 438, 100 N.E.2d 591.

■ In *Ex-Cell-O*, the plaintiff, a Michigan corporation, had its factory and place of business in Detroit. It never qualified to do business in Illinois as a foreign corporation and had no office, store, ware-

house, or bank account in Illinois. It sold its products to Illinois consumers through three manufacturer's representatives who solicited orders for Ex-Cell-O, but who did not have the authority to bind the corporation to those orders. The representatives paid their own expenses connected with the solicitation of company orders. Based on a lack of contacts with Illinois and the limited authority granted to the representatives, the supreme court ruled Ex-Cell-O was not engaged in the business of selling tangible personal property at retail in Illinois. The supreme court deliberately avoided the declaration of a general definition of the term at issue when it stated:

"An occupation, the business of which is to sell tangible personal property at retail, is the composite of many activities extending from the preparation for, and the obtaining of, orders for goods to the final consummation of the sale by the passing of title and payment of the purchase price. It is obvious that such activities are as varied as the methods which men select to carry on retail business and it is therefore not possible to prescribe by definition which of the many activities must take place in Illinois to constitute it an occupation conducted in this State. Except for a general classification that might be made of the many retail occupations, it is necessary to determine each case according to the facts which reveal the method by which the business is conducted." *Ex-Cell-O*, 383 Ill. at 321-22, 50 N.E.2d at 507.

Chemed argues the location of inventory or property in Illinois alone is insufficient to satisfy the "composite of many activities" test described by the *Ex-Cello-O* court. It is noteworthy the language in *Ex-Cell-O* highlights selling activities; nowhere does it indicate the location of inventory or property is a relevant activity.

In *Automatic Voting Machine* the contacts of the plaintiff corporation with Illinois were limited to promotional work, the delivery of bids, and the delivery of machines and services. Automatic Voting Machine Company was a Delaware corporation with its only office and factory in Jamestown, New York. All of its corporate records were kept in New York, as well as the billing department. The corporation had no office, warehouse, or other building in Illinois. The sales at issue were made by an agent in Illinois who promoted the product and subsequently supervised company employees in the installation and servicing of the machines. Again, the supreme court found these contacts to be insufficient to justify the application of the RTA.

The Department argues this case is distinguishable from the *Ex-Cell-O* and *Automatic Voting Machine* cases because Chemed's con-

tacts with the municipality and metropolitan regions are not merely limited to the promotional activity of its sales representatives. For lack of a legislative or judicial definition, the Department has declared via its regulations that a vendor who maintains a substantial inventory in a municipality or metropolitan region, which is restocked regularly, and from which deliveries are made within Illinois, is doing business within the region and is thus liable for MROT and RTA taxes. The Department stresses the inventory must be located in the municipality or metropolitan region *at the time of the sale and* the property must be delivered to a purchaser *within Illinois.*

The Department argues its regulations are within the scope allowed by their statutes by comparing them to the following definition of the term "Retailer maintaining a place of business in this State," contained in section 2 of the Use Tax Act (UTA):

"1. Having or maintaining within this State, directly or by a subsidiary, an office, distribution house, sales house, warehouse or other place of business, or any agent or other representative operating within this State under the authority of the retailer or its subsidiary, irrespective of whether such place of business or agent or other representative is located here permanently or temporarily, or whether such retailer or subsidiary is licensed to do business in this State;

2. Engaging in soliciting orders within this State from users by means of catalogues or other advertising, whether such orders are received or accepted within or without this State." Ill. Rev. Stat. 1987, ch. 120, par. 439.2.

■■ ■ Chemed argues it is erroneous to argue the UTA is similar in scope to the regulations at issue because the acts which govern these regulations are themselves dissimilar. The ROT, MROT, and RTA all tax persons who are engaged in the occupation of retail selling. On the other hand, the UTA is levied on the purchaser for the privilege of using property purchased outside Illinois from a retailer. The purpose of the Illinois UTA is described as follows:

"It is aimed at protecting the retailers' occupation tax base against being reduced by the out-of-state buying of tangible personal property by Illinois users from persons who do not engage in enough Illinois activity to be taxable under an occupation tax like the retailers' occupation tax." (Ice, *The Retailers' Occupation Tax Act and Related Tax Laws,* U. Ill. L.F. 614, 617 (1961).)

To be liable for use tax under the UTA, an out-of-State retailer must have certain minimum contacts with Illinois. (*Scripto, Inc. v. Carson*

(1960), 362 U.S. 207, 4 L. Ed. 2d 660, 80 S. Ct. 619.) By comparison, the occupational tax acts require a composite of many activities before local tax liability may be imposed. See *Ex-Cell-O*, 383 Ill. 316, 50 N.E.2d 505.

Chemed argues the UTA, although narrower, is more similar in scope to the local use tax acts known as the Municipal Use Tax Act (MUT) and the Regional Transportation Authority Municipal Use Tax (RTA-UT). (Ill. Rev. Stat. 1987, ch. 24, par. 8—11—6; Ill. Rev. Stat. 1987, ch. 111²/₃, par. 704.03(g).) Those subject to the local use tax acts "shall have the same rights, remedies, privileges, immunities, powers and duties, and be subject to the same conditions, restrictions, limitations, penalties" (Ill. Rev. Stat. 1987, ch. 24, par. 8—11—6), "exclusions, exemptions and *definitions of terms*" (emphasis added) (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 704.03(g)), "as are prescribed in [section] 2 [of the UTA] (*** except the definition of 'retailer maintaining a place of business in this State')." (Ill. Rev. Stat. 1987, ch. 24, par. 8—11—6.) The local use taxes are collected only from persons whose Illinois address for titling or registration purposes is given as being in a metropolitan region (RTA-UT), or municipality (MUT).

By failing to incorporate that particular UTA definition in the MUT and RTA-UT acts, Chemed argues the legislature indicated its intent to exempt out-of-State retailers with only minimum contacts with Illinois from the tax collection responsibility imposed by the UTA. Chemed maintains the Department regulations at issue are an attempt to tax out-of-State sellers under the guise of the MROT and RTA acts when the legislature expressly avoided such taxation under the MUT and RTA-UT acts. Chemed finds this is proof the Department regulations are beyond the scope of these acts because they equate a minimum contact activity (location of property in Illinois) with "engaging in the business of selling property at retail."

■■■ In *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 447 N.E.2d 295, the supreme court discussed at length the weight to be given administrative construction.

> "It is generally recognized that courts will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute. [Citations.] ***
>
> A significant reason for this deference is that courts appreciate that agencies can make informed judgments upon the issues, based upon their experience and expertise. [Citations].
>
> This court has recognized that while they are not binding on the court, 'interpretations by administrative agencies express

an informed source for ascertaining the legislative intent.' *Adams v. Jewel Companies, Inc.* (1976), 63 Ill. 2d 336, 344-45 [, 348 N.E.2d 161]; see *Johnson v. Marshall Field & Co.* (1974), 57 Ill. 2d 272, 278 [, 312 N.E.2d 271] (the interpretations of statutes by administrative bodies constitute an informed source for guidance to ascertain the legislature's intention when it enacted the statute); *P.H. Mallen Co. v. Department of Finance* (1939), 372 Ill. 598, 601 [, 25 N.E.2d 43] (a construction placed on a statute by a departmental agency is entitled to great weight, though the court still retains its authority to construe the statute to the contrary)." *Illinois Consolidated Telephone Co.*, 95 Ill. 2d at 152-53, 447 N.E.2d at 300.

■■■ In order to carry out its statutory directives, the Department has, via its regulations, construed the ROT in conjunction with its local counterparts (MROT and RTA). These taxes were enacted to indirectly tax sales of tangible personal property by imposing a tax on the privilege of engaging in the retail business within Illinois. (*Modern Dairy Co. v. Department of Revenue* (1952), 413 Ill. 55, 108 N.E.2d 8.) Although the UTA and its local counterparts complement the occupational taxes (*Illinois Road Equipment Co. v. Department of Revenue* (1965), 32 Ill. 2d 576, 207 N.E.2d 425), we find they are quite different in scope and thus are not readily comparable.

■■■ It is necessary to examine the Department regulations that set guidelines as to what is and is not considered "engaged in the business of selling" for local occupational tax purposes. Section 270.115(a) indicates mere solicitation of orders does not constitute doing business. Enough of the selling activity must occur within the municipality before a tax may be levied. (86 Ill. Adm. Code §320.115(a) (1985).) While the regulations do not attempt to recognize every kind of situation which may arise, they declare the seller's acceptance of the purchase or other contracting action is the most important single factor in the occupation of selling. (86 Ill. Adm. Code §270.115(b)(1) (1985).) Considerations which are not controlling include the point at which the property will be consumed, the place the purchaser resides, or the place at which the technical sale occurs, *i.e.*, where title passes. The location of the occupation of selling is what is important, not the place where the sales are made. 86 Ill. Adm. Code §270.115(c)(2) (1985); *Edward Don & Co. v. Zagel* (1981), 95 Ill. App. 3d 589, 420 N.E.2d 501.

Section 270.115(b)(3) of the Code was added to the MROT regulations on October 19, 1979. (The RTA regulation, section 320.115(b)(3), was promulgated on July 1, 1980.) Prior to that time it was appar-

ently the Department's position that the municipality in which the retailer's place of business was located, rather than the places where it solicited orders and delivered merchandise, was considered the place where he was engaged in the occupation of selling. Chemed contends this administrative practice was consistent and unchallenged from 1955 to 1979 and should not have been replaced by regulations that make the location and production of property the determinative factor. According to Chemed, the Department was without authority to amend the prior rule absent legislative action and when the scope of the command was not in question. *American Oil Co. v. Mahin* (1971), 49 Ill. 2d 199, 273 N.E.2d 818.

In *American Oil,* the Department had interpreted the ROT and UTA so as to exclude motor fuel tax from the base upon which the taxes were compiled. After 35 years, the Department issued a proposed amendment to its rules and required retailers to include the motor fuel tax in the base upon which the taxes were computed. The court held the Department did not have the authority to make the proposed revision because the rule had been applied continuously and uniformly for a substantial period of time, the legislature had reenacted or amended the statutes during the period of time without changing the particular wording and the rule was a reasonable and necessary exercise of discretion by the Department.

*American Oil* is distinguishable from this case. The amendments at issue here are not merely proposed, rather they have been in effect and have been left undisturbed by the legislature and courts for eight years. The acts have been amended several times since the regulations were adopted, yet the legislature has not amended them so as to clarify their scope.

Chemed argues the regulations (other than section 270.115(g) regulating coal sales) indicate the activities relating to entering the sales contract are the most important factors which constitute "engaged in the business of selling." With the addition of section 270.115(b)(3) to the Code, liability under the local tax act can now be determined by only *one* factor, *i.e.*, the place where the property is located at the time of the sale, not a "composite of many activities" (*Ex-Cell-O,* 383 Ill. 316, 50 N.E.2d 505) that better indicates where the occupation of selling is taking place. Chemed maintains section 270.115(b)(3) alters the focus of taxation. The emphasis is now on one factor—the location of property at the time of the sale—to the exclusion of all other elements which must be considered in determining where the occupation of selling takes place. According to Chemed, the regulation has changed the nature of the MROT from a tax on the business of selling, to a tax on

the business of storage or production of property.

Chemed's argument ignores the fact that the taxpayer, in addition to maintaining inventory or producing goods in the municipality, must also deliver them within Illinois. Section 270.115(b)(3) acts to tax out-of-State sellers who use the warehouse or manufacturing plant as a base of operation for selling within the State. During the audit period at issue, Chemed engaged in the business of retail selling in the municipality through DuBois. Some 250 of the 750 different types of products it manufactures were maintained in substantial numbers at a warehouse in Chicago and sold to Illinois customers for their use and consumption. By maintaining and replenishing this inventory on a regular basis and by delivering these goods within Illinois, the Department argues Chemed should be considered engaged in a retail occupation in Chicago sufficient to justify the application of the MROT and RTA. We agree.

■■■ We believe the regulations the Department has enacted are within the scope of their corresponding acts. The regulations recognize the business of retail selling can involve a variety of activities, and therefore they do not attempt to provide a complete list. Mere solicitation is not enough and the focus must be on the occupation of selling, not where the goods are to be consumed or where a title passes. The regulations put great emphasis on the place the purchase order is accepted, but overrides that factor as follows:

> "Regardless of the place at which the purchase order is accepted, where tangible personal property is located within a municipality at the time of its sale (or is subsequently produced in Illinois), then delivered in Illinois to the purchaser, *** the place where the property is located at the time of the sale (or subsequent production in Illinois) will determine where the seller is engaged in business for [MROT] purposes with respect to such sale." 86 Ill. Adm. Code §270.115(b)(3) (1985).

In adopting the language of section 270.115(b)(3), the Department was asked the following question by the joint committee on administrative review:

> "How are the out-of-state vendors engaged in the business of selling tangible personal property at retail in a particular county or municipality when they are neither located nor sell their products in that municipality or county and the only connection to that county or municipality is that the product happens to be located, stored, or produced in that county or municipality?"

The Department, as shown by a memorandum in the record, responded:

"[T]his rule will eliminate a competitive advantage enjoyed by out-of-state vendors who produce or warehouse their product in a municipality or county in Illinois but are immune from the municipal or county retailers' occupation tax since they are neither located nor sell their products in the particular municipalities or counties. The Department believes that persons may be 'engaged in the business of selling tangible personal property' in a municipality or county, even though the order is taken at a location outside the state, when the goods are stored or produced in an Illinois county or municipality and subsequently delivered within Illinois. *This would appear to be a reasonable interpretation of the statutory language."* (Emphasis added.)

The Department has interpreted that the statute imposes tax liability on out-of-State sellers who hold goods within Illinois at the time of the sale and then deliver those goods within Illinois. It determined such activity is sufficient to bring a foreign corporation within its local taxing power, regardless of where the purchase order was accepted. This concept was discussed by the Supreme Court in *Norton Co. v. Department of Revenue* (1951), 340 U.S. 534, 95 L. Ed. 517, 71 S. Ct. 377. In that case, the petitioner, a Massachusetts corporation, operated a branch office and warehouse in Chicago from which it made local sales at retail which were subject to Illinois occupational tax. Petitioner also took orders through its Chicago office and forwarded them on to the home office in Worcester, Massachusetts. The Worcester office would then send goods to Illinois where the Chicago office would intervene and dispense the goods at a reduced freight charge. The court held the corporation liable for both the direct and indirect sales, but held it exempt from tax on orders sent directly to Worcester by the customer and shipped from Worcester directly to the buyer in Illinois. The Court held:

"Petitioner elected to localize itself in the Illinois market with the advantages of a retail outlet in the State, to keep close to the trade, to supply locally many items and take orders for others, and to reduce freight costs to local consumers. Although the concern does not, by engaging in business within the State, lose its right to do interstate business with tax immunity, [citation] it cannot channel business through a local outlet to gain the advantage of a local business and also hold the immunities of an interstate business." *Norton*, 340 U.S. at 538-39, 95 L. Ed. at 521, 71 S. Ct. at 381.

In this case, Chemed does not have a Chicago office *per se*, yet the LaGrou warehouse serves the same purpose. The facts indicate

Chemed uses LaGrou as a base of operation for its Illinois sales, even though all orders are accepted in Ohio. It is apparent the Department foresaw such a fact scenario when it enacted the regulations at issue in this case. The regulations are well within the scope of the MROT and RTA acts and constitute a reasonably necessary and valid exercise of discretion by the Department as an administrative agency.

Next, we resolve whether the Department regulations at issue are unconstitutionally vague so that they violate the due process clauses of the United States and Illinois constitutions.

The trial court found the Department regulations were "unreasonable, arbitrary and capricious." On appeal, Chemed maintains section 270.115(b)(3) of the Code is void for vagueness because its language conflicts with the language of sections 270.115(b)(1) and 270.115(c)(2), a discrepancy which makes it impossible for a person of common intellect to determine whether he is engaged in the business of retail selling within a municipality. See *DeGrazio v. Civil Service Comm'n* (1964), 31 Ill. 2d 482, 202 N.E.2d 522.

■■■ ■ An act will not be construed as being void for vagueness if the rights and duties it imposes are prescribed in terms definite enough to serve as a guide to those who must comply with it. (*Chastek v. Anderson* (1981), 83 Ill. 2d 502, 416 N.E.2d 247; *Rosemont Building Supply, Inc. v. Illinois Highway Trust Authority* (1970), 45 Ill. 2d 243, 258 N.E.2d 569.) Section 270.115(b)(1) declares "the seller's acceptance of the purchase order or other contracting action in the making of the sales contract is the most important single factor in the occupation of selling." (86 Ill. Adm. Code §270.115(b)(1) (1985).) For liability to exist, acceptance must occur at the seller's place of business within the municipality or by someone who is working out of such place of business. Section 270.115(b)(3) of the Code, however, disregards the place at which the purchase order is accepted and places the emphasis on the location of the goods at the time of the sale and their subsequent delivery in Illinois. Chemed maintains it is senseless to tax a business that accepts purchase orders outside the State of Illinois, merely because the goods purchased were located in Illinois at the time of the sale. The location or production of the goods, a less significant factor than where the purchase order is accepted, gives rise to a tax, even when the sale is otherwise unrelated to Illinois.

Again Chemed's argument ignores the two-fold requirement of section 270.115(b)(3). Section 270.115(b)(1) lists the acceptance of the purchase order at the seller's place of business as the single most important factor in determining whether a seller is engaged in the business of selling. However, section 270.115(b)(1) does not attempt "to

anticipate every kind of fact situation that may arise in this connection." (86 Ill. Adm. Code §270.115(b)(1) (1985).) Although the birthplace of the contract is an important factor in some cases, in others where the seller's goods are located within the municipality or metropolitan region at the time of the sale and then delivered within the State of Illinois, the Department has determined the imposition of a local occupational tax is justified, regardless of where the purchase order is accepted. 86 Ill. Adm. Code §§270.115(a)(1), (b)(3) (1985).

Chemed also quarrels with the alleged conflicts between sections 270.115(c)(2) and 270.115(b)(3) of the regulation. Section 270.115(c)(2) states the place where a sale takes place is not an important consideration in determining whether the occupation of selling exists for purposes of MROT. Section 270.115(b)(3) provides that the place where the property is located at the time of the sale determines whether a seller is engaged in the business of selling for purposes of MROT with respect to such sale. The term "sale" is defined by the Uniform Commercial Code to be the transfer of title. (Ill. Rev. Stat. 1987, ch. 26, pars. 2—106, 2—401(2)(b).) Chemed contends that in most cases, the place where title passes is the place where the property is delivered and thus, for statutory purposes, is the place where the personal property is located at the time of the sale. Chemed finds it confusing that the place where the title passes can be a controlling factor in section 270.115(b)(3) at the same time it is insignificant in section 270.115(c)(2).

The Department justifiably finds fault with Chemed's reasoning. Section 270.115(c)(2) declares that the place of delivery and the transfer of title is not a determinative factor because it is only the place of the "technical sale." Under section 270.115(b)(3), the place where the business of selling takes place is where the property is located at the time of sale, or is subsequently produced. The place of delivery is not necessarily where the business of selling is taking place. In *Metnick v. Department of Revenue* (1963), 28 Ill. 2d 180, 190 N.E.2d 750, the court upheld the assessment of MROT on a seller who sold cars to non-Chicago residents and delivered them outside the city. The court found the seller was engaged in the business of selling within the municipality because all of the "necessary incidents to the sales transactions, the offer, the acceptance, the payment of money and the execution of the necessary documents, occurred inside the city of Chicago." *Metnick*, 28 Ill. 2d at 183, 190 N.E.2d at 751.

We cannot agree with the trial court's characterization of the regulations at issue as unreasonable, arbitrary, and capricious when a commonsense reading of them clearly reveals the parameters of a

seller's liability for local occupational taxes. The void-for-vagueness doctrine is not appropriately applied to a legislative directive whose command is reasonably clear.

Finally, we dispense with Chemed's argument the Department regulations at issue interfere with interstate commerce in violation of article I, section 8, of the United States Constitution. U.S. Const., art. I, §8.

Section 270.115(b)(3) of the Code provides that, regardless of where an order is accepted, if property is located within a municipality at the time of sale and "no other municipality or county in this State would receive or have the power to impose Municipal or County Retailers' Occupational Tax with respect to such sale," then that municipality may impose the MROT. (86 Ill. Adm. Code §270.115(b)(3) (1985).) Chemed argues the language quoted creates on its face an unconstitutional discrimination against out-of-State retailers. According to Chemed, the discrimination exists where an out-of-State retailer who accepts orders from outside Illinois will incur MROT and RTA for Chicago because it has inventory located there, while an Illinois retailer who accepts orders at a location in Springfield, for example, but warehouses inventory in Chicago, will not incur Chicago MROT or RTA. Citing *Armco Inc. v. Hardesty* (1984), 467 U.S. 638, 81 L. Ed. 2d 540, 104 S. Ct. 2620, Chemed argues this practice violates the rule that a municipality may not tax an out-of-State seller differently than an Illinois seller, even if the total tax paid in Illinois might be the same.

■■■ Chemed's reasoning is flawed. The hypothetical Springfield retailer is not evading an occupational tax altogether. Rather, it is excluded from Chicago municipal tax because it is already liable for an occupational tax in Sangamon County. If Chemed engaged in the business of selling in Springfield, in addition to its warehousing and delivery functions in Chicago it, like the Springfield business, would not be liable for the Chicago tax. Likewise, if the Springfield retailer utilized a warehouse in Chicago only, but conducted all its business in Springfield, it would be taxed just as Chemed was taxed in this case. The regulations do not favor Illinois retailers in violation of interstate commerce.

Based upon its warehousing and subsequent sales and deliveries of substantial inventories in the City of Chicago and county of Cook, we conclude Chemed is "engaged in the business of retail selling" for MROT and RTA purposes with respect to such sales. The term "engaged in the business of retail selling" has not been defined by the legislature. We find the Department's regulations governing the appli-

cable statutes reasonably construe the term. The trial court erroneously exempted Chemed from MROT and RTA and unjustifiably declared the corresponding Department regulations void, unreasonable, arbitrary, and capricious.

We reverse the decision of the circuit court of Sangamon County. The final administrative decision of the Department is affirmed and reinstated, and Chemed is liable to the Department for MROT and RTA in the amount of $230,447, plus interest.

Circuit court reversed; administrative decision affirmed and reinstated.

McCULLOUGH, P.J., and GREEN, J., concur.