2016 IL App (1st) 150545
No. 1-15-0545
Opinion filed June 14, 2016

Second Division

IN THE.

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| STEVEN LESNER, | ) ) ) ) |
| Petitioner-Appellant, | ) ) |
| v. | ) ) ) |
| THE POLICE BOARD OF THE CITY OF CHICAGO and GARRY McCARTHY, Superintendent, | ) ) ) ) ) |
| Respondents-Appellees. | ) ) ) |

| |
|---|
| Appeal from the Circuit Court of Cook County. |
| |
| No. 14 CH 12277 |
| |
| The Honorable Kathleen Kennedy, Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justice Neville concurred in the judgment and opinion.
Presiding Justice Pierce dissented, with opinion.

**OPINION**

¶ 1   Does the City of Chicago's police board have the statutory discretion to order an officer's

discharge after the police superintendent made the less drastic disciplinary recommendation of

suspension?

¶ 2   This case presents a rare instance where the police board asserted its authority by

disagreeing with the superintendent's recommendation and imposed a harsher penalty for

misconduct. In a case of first impression, we must determine if the Illinois and Chicago

Municipal Codes grant the Chicago police board the power to impose what the police board

considers the appropriate penalty for a police officer's misconduct. We hold the police board acted within its legal authority under both the Illinois and Chicago Municipal Codes in discharging the petitioner, a former Chicago police sergeant whose misconduct resulted in a woman killing herself with his auxiliary firearm.

¶ 3    At its core, the petitioner and the dissent view the Chicago police board as a sort of bureaucratic rubber-stamp with no capacity to increase (though they concede it may decrease) the police superintendent's disciplinary recommendations. This essentially treats the police board as a procedural extension of the superintendent's authority. To the contrary, the Illinois and Chicago Municipal Codes, which created the police board, put an end to dealing with police misconduct as solely an internal police function. The municipal codes along with the police board's rules of procedure place final decision-making power on matters of discharge, removal, and suspension exceeding 30 days in the control of the police board as an autonomous, impartial public body. Any other interpretation circumvents the legislative purposes for the police board and renders the police board's function symbolic instead of substantive.

¶ 4                                    BACKGROUND

¶ 5     None of the facts are in dispute. On February 17, 2009, at about 7:45 p.m., Chicago police sergeant Steven Lesner (the petitioner) and two officers in a beat car responded to a call of an argument between Catherine Weiland and her boyfriend at a restaurant on Chicago's north side. The officers removed Weiland's boyfriend from the restaurant. Weiland lived nearby and had a car. Lesner thought Weiland seemed distraught and offered to drive her home in his police car. On the way, Weiland asked Lesner to stop and buy a bottle of wine. Lesner agreed. In uniform, Lesner went into a store and bought wine. When they arrived at Weiland's apartment, Lesner helped Weiland carry her things inside. He stayed for about 40 minutes and talked to

Weiland and to her brother and father, who lived in separate units in the three-flat building. Weiland and her brother were concerned about Weiland's car. Lesner agreed to drive them to the restaurant to retrieve it. Before returning to patrol duty, Lesner gave Weiland his card on which he wrote his personal cell phone number.

¶ 6    At about 11 p.m., when Lesner's shift ended, he received a call from Weiland inviting him out for a drink. Lesner declined but accepted her invitation to come to her apartment for a drink and watch television. Weiland asked Lesner to buy more wine on the way. Before leaving the station, Lesner put his duty firearm in his locker and strapped his auxiliary firearm to his ankle. On his way over to Weiland's apartment, Lesner bought Weiland some wine and a six-pack of beer for himself.

¶ 7    Lesner spoke to Weiland's brother for about 20 minutes before going upstairs to Weiland's apartment and watching television with her. Lesner sat on the loveseat and Weiland sat on a nearby chair. Lesner removed his auxiliary weapon from his ankle holster and placed both on the floor next to his seat. Lesner testified that he took off the gun when he thought Weiland wasn't looking, because he had his feet on a table and "it looks kind of stupid." About an hour later, just before 1:40 a.m., Weiland said she needed to take her medication, left the room, and returned with a large pill box. Lesner, who had drunk three or four beers, excused himself to use the bathroom. That's when Weiland picked up Lesner's gun and shot herself in the head.

¶ 8    After hearing one gunshot, Lesner found Weiland in the chair he had been sitting in with his gun in her lap. Lesner called 911 and contacted his watch commander. He also informed Weiland's father and brother and stayed at the apartment until emergency personal and police

arrived. An investigation over the next few days revealed Weiland had a bipolar disorder and had not been taking her medication.

¶ 9        Lesner was not immediately disciplined but given other police duties for a few weeks. On March 1, 2011, Lesner returned to patrol duties, where he remained for 2½ years, until the superintendent filed disciplinary charges against him on September 11, 2013. The superintendent alleged that Lesner's conduct violated three rules of the Chicago police department: rule 2 (action or conduct which impedes the department's efforts to achieve its policy and goals or brings discredit on the Department); rule 10 (inattention to duty); and rule 17 (drinking alcoholic beverages while on duty or in uniform, or transporting alcoholic beverages on or in department property but not in the performance of police duty). The superintendent recommended a 60-day suspension. Lesner served 30 of those days from October 5 to November 4, 2013. The superintendent recommended to the police board charges that would impose the balance of 30 days.

¶ 10       Following the filing of the charges, Lesner and the superintendent, in an attempt to resolve the matter without an evidentiary hearing, negotiated a stipulation under which Lesner would plead guilty and accept the 60-day suspension. The stipulation would have no effect should the police board reject the agreed upon suspension. With regard to the stipulation, the hearing officer advised the parties that in deciding how to proceed, they should keep in mind that the police board "feels it can increase or decrease or reduce that 60-day penalty." The parties presented the stipulation to the police board and argued in its favor.

¶ 11       The police board rejected the stipulation. The case then proceeded to an evidentiary hearing before a hearing officer on May 23, 2014. Lesner testified as an adverse witness during the superintendent's case and admitted the factual basis for the violations. During Lesner's case,

four witnesses testified about Lesner's character and Lesner testified about his complimentary work history, including his arrests, awards, and commendations. During closing arguments, Lesner's attorney and the counsel for the superintendent pressed for the 60-day suspension.

¶ 12     The police board issued findings and decision, concluding that the superintendent had proved violations of departmental rules 2, 10, and 17 and determining that Lesner "must be discharged from his position due to the serious nature of the conduct of which it found him guilty." The police board relied on section 2-84-030 of the Municipal Code of Chicago (Chicago Municipal Code § 2-84-030 (amended Sept. 8, 2011)) and section 10-1-18.1 of the Illinois Municipal Code (65 ILCS 5/10-1-18.1 (West 2012)), as authority to discharge Lesner. The police board explained that under these provisions, the superintendent "recommends" an appropriate penalty to the police board and the recommendation does not bind the police board. Rather, the concurrence of a majority of the police board on the penalty requires the superintendent to impose the police board's instructions. Thus, "the [police] Board has the power to impose any penalty it deems appropriate in the cases in which the Superintendent has recommended a suspension in excess of 30 days."

¶ 13     The police board found that Lesner made "reprehensible" decisions on the night Weiland killed herself. The police board did not evaluate Lesner's conduct as an error in judgment in the course of making a split second decision. Instead, it described Lesner's actions that night as "a series of calculated and knowing decisions, made over the course of hours while on and off duty, aimed at using his position as a sergeant to further a personal relationship and that exhibited a complete lack of sound judgment, beginning with his decision to go into a liquor store while on duty and in uniform and buy alcohol for a woman who was distraught after an altercation with her boyfriend to which police were called, and ending with his decision to leave his loaded gun

on the floor while he went to the bathroom, which allowed the woman to pick up his gun and use it to shoot herself in the head."

¶ 14    The police board also made findings as to mitigating evidence, including Lesner's distinguished record as a police officer, his cooperation in Weiland's death investigation, his good reputation in the community, and the superintendent's recommendation of a 60-day suspension.

¶ 15    Based on everything before it, the police board deemed Lesner's conduct so serious that it "renders his continuance in his office detrimental to the discipline and efficiency of the service of the Chicago Police Department, and is something which the law recognizes as good cause for him to no longer occupy his office." In addition, "[w]ith all due respect to the Superintendent," the police board pointed to an extensive "pattern of misconduct" with "grave" consequences as leading it to finding "discharge is the only appropriate penalty." The police board unanimously approved the findings and the decision to discharge Lesner.

¶ 16    Lesner filed a petition for administrative review. The trial court affirmed the police board's decision, explaining that the superintendent's recommendation of a lesser penalty did not impact the police board's authority to discharge an officer. Otherwise, according to the trial court, the superintendent would effectively be "given the power to dictate the penalty, thereby usurping the [police] Board's authority and obviating the evidentiary hearing provision." The court also determined record support for the police board's conclusion that cause for discharge existed and the decision was not excessive, unduly harsh, or unrelated to the needs of service.

¶ 17                                    ANALYSIS

¶ 18    Lesner raises two issues: (i) the police board lacks authority to impose the ultimate penalty of discharge after the superintendent recommends a suspension; and (ii) alternatively,

even if the police board has authority to discharge, its decision was arbitrary and unrelated to the needs of the department. The superintendent (the appellee), pursuant to his statutorily mandated duty to enforce the decision of the police board, contends that the police board's decision discharging Lesner was within the scope of the police board's authority under section 10-1-18.1 of the Illinois Municipal Code (65 ILCS 5/10-1-18.1 (West 2012)) and section 2-84-030 of the Chicago Municipal Code (Chicago Municipal Code § 2-84-030 (amended Sept. 8, 2011)).

¶ 19 We review the police board's decision and not the trial court's ruling. *Krocka v. Police Board*, 327 Ill. App. 3d 36, 46 (2001). Administrative review law applies to the examination of the police board's decision and extends to all questions of law and fact presented by the record. 735 ILCS 5/3-110 (West 2012). The police board's factual findings are considered *prima facie* correct and may not be set aside unless contrary to the manifest weight of the evidence. *Launius v. Board of Fire & Police Commissioners*, 151 Ill. 2d 419, 427 (1992). As to the police board's conclusions of law, however, no deference applies; we review these conclusions *de novo*. *Albazazz v. Illinois Department of Professional Regulation*, 314 Ill. App. 3d 97, 105 (2000).

¶ 20 Police Board's Authority to Discharge Employees

¶ 21 Lesner's first–and principal–argument contends that the history of the applicable provisions in the Illinois and Chicago Municipal Codes establish the police board's authority in disciplinary matters and shows that the legislature intended for the superintendent to possess primary responsibility for discipline and for the police board to act as a mere check on the superintendent's discretion. In that subordinate role, Lesner asserts, the police board may either approve, reverse, lessen, or increase the superintendent's recommended discipline but may not impose a more onerous type of discipline than the superintendent recommended. (For example, here, the police board could approve, reverse, lessen or increase the period of suspension, but

could not discharge.) The superintendent responds that his designation of an appropriate penalty presents a nonbinding recommendation and the police board may impose a different penalty altogether.

¶ 22        Administrative agencies, such as the police board, exercise purely statutory powers and possess no inherent or common-law powers. *O'Grady v. Cook County Sheriff's Merit Board*, 260 Ill. App. 3d 529, 534 (1994). An administrative agency derives all its powers from the provisions of the statute under which it acts. *Id*. An express grant of power to an administrative body or officer includes the authority to perform acts that are reasonably necessary to execute its power and perform specifically conferred duties. *Id*.

¶ 23        In 2007, after the matter of the Chicago police department's handling of police misconduct cases became a public scandal, the city council created and approved an Independent Police Review Authority (IPRA) to serve as a repository and investigate misconduct allegations. IPRA, as an independent agency of the City of Chicago, separate from the Chicago police department, has a civilian chief administrator and a staff of civilian investigators. When the IPRA receives a complaint about officer misconduct (except for matters handled by the police department's internal affairs division), it conducts an investigation and, if the allegations are sustained, the chief administrator makes a recommendation to the superintendent of police on appropriate discipline. If the superintendent disagrees with the recommendation, the matter goes before a panel of three police board members. If the panel determines that the superintendent has not met his or her burden of overcoming the chief administrator's recommendation, the superintendent is deemed to have accepted the chief administrator's recommendation. An officer discharged or suspended for more than 30 days is entitled to a hearing before the police board.

¶ 24        The Chicago police board is an independent board of nine civilians responsible for deciding the most serious police disciplinary cases. The police board's authority arises under section 10-1-18.1 of the Illinois Municipal Code (65 ILCS 5/10-1-18.1 (West 2012)) and section 2-84-030 of the Chicago Municipal Code (Chicago Municipal Code § 2-84-030 (amended Sept. 8, 2011)). The Illinois Municipal Code sets out police discipline in municipalities of more than 500,000 people, and police board hearing procedures, rulemaking, and enforcement of decisions. Under section 10-1-18.1, the police board "shall" hold a hearing when charges against an officer or employee are filed and "removal or discharge, or suspension of more than 30 days is recommended." 65 ILCS 5/10-1-18.1 (West 2012). The police board has the task of making "findings and decision[s]," which "when approved by the Board, shall be certified to the superintendent and shall forthwith be enforced by the superintendent." *Id*. "A majority *** of the Police Board must concur in the entry of any disciplinary recommendation or action." *Id*.

¶ 25        Similarly, section 2-84-30 of the Chicago Municipal Code grants the police board the power, "To serve as a board to hear disciplinary actions for which a suspension for more than the 30 days expressly reserved to the superintendent is recommended, or for removal or discharge involving officers and employees of the police department in the classified civil service of the city." Chicago Municipal Code § 2-84-030 (amended Sept. 8, 2011). The Municipal Code further provides that should the superintendent recommend removal, discharge, or suspension of more than 30 days, a hearing "shall be held" before either the police board, or any member or hearing officer designated by the police board. "The hearing officer may take judicial notice *** on offers of proof, receive relevant evidence during the hearing and certify the record and make findings of fact, conclusions of law and recommendations to the police board following the hearing." Then "any disciplinary recommendation or action" must be approved by a majority of

the members of the police board, and once approved, enforced "forthwith" by the superintendent. *Id.*

¶ 26        The Chicago Municipal Code also describes the powers and duties of the superintendent. Section 2-84-040 involves the scope of the superintendent's responsibilities and authority. Section 2-84-050 provides that the superintendent "shall have the power and duty *** to take disciplinary action against employees of the department" and "discharge [or] suspend *** the employees of the department." Chicago Municipal Code § 2-84-050. Significantly, section 2-84-050 also subjects the superintendent's powers and duties to the rules of the department and the instruction of the police board. *Id.*

¶ 27        Neither the Illinois nor the Chicago Municipal Codes contain express language regarding the situation presented here. Thus, we must determine whether, after rejecting the superintendent's recommendation of suspending Lesner for his misconduct, the statute and ordinance read in conjunction with the police board's rules of procedure give the police board authority to impose the more drastic penalty of discharge.

¶ 28        Statutory construction requires us to ascertain and give effect to the legislature's intent. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503-04 (2000). The best indication of legislative intent comes from the plain and ordinary meaning of the statutory language itself. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994). The construction of a statute involves a question of law which we review *de novo. In re Estate of Dierkes*, 191 Ill. 2d 326, 330 (2000). Typically *de novo* review means "independent and not deferential" (*Goodman v. Ward*, 241 Ill. 2d 398, 406 (2011)), yet on matters of statutory construction, the reviewing court gives the interpretation of the agency charged with the statute's administration "substantial weight and deference." *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d

368, 387 n.9 (2010). This recognizes the agency's expertise and experience and treats the agency as an informed and credible source of the legislature's intent. *Id*. Nevertheless, we may reject unreasonable or erroneous interpretations applied by an administrative agency. *Shields v. Judge's Retirement System*, 204 Ill. 2d 488, 492 (2003).

¶ 29        Lesner argues, that the legislative history of the Illinois and Chicago Municipal Codes indicates that the drafters intended the superintendent to possess primary responsibility for discipline and the police board to review only the type of penalty that the superintendent recommends (for example, suspension) without any ability to impose a more severe type of penalty. The dissent agrees, stating that the police board does not have "the authority to impose an order of discharge where the Superintendent has recommended a period of suspension." *Infra* ¶ 53. Lesner asserts that when the legislature amended the Civil Service Act (Ill. Rev. Stat. 1949, ch. 24½, ¶ 38b) to establish a police board under section 10-1-18.1 of the Illinois Municipal Code (65 ILCS 5/10-1-18.1 (West 2014)), the legislature wanted the police board to serve the same function as the Civil Service Commission, which had handled disciplinary matters in a manner to protect the jobs of Chicago police officers. See *Glenn v. City of Chicago*, 256 Ill. App. 3d 825, 834 (1993) (Civil Service Act designed to "protect efficient public employees from partisan political control" (internal quotation marks omitted)). Lesner asserts that, like the Civil Service Act, section 10-1-18.1 of the Illinois Municipal Code and section 2-84-30 of the Chicago Municipal Code protect public employees by guaranteeing procedural due process for any officer subject to discipline.

¶ 30        Lesner refers to article IV(B)(6) of the Police Board Rules of Procedure which involves the superintendent recommending that an officer be suspended for between 6 and 30 days. Chicago Police Board Rules of Procedure, art. IV(B)(6) (eff. Nov. 1, 1975), *available at*

http://www.cityofchicago.org/content/dam/city/depts/cpb/PoliceDiscipline/RulesofProcedure201 50416.pdf. Under this rule, the police board first considers the report of the hearing officer or member of the police board who has reviewed the file. Then, the police board "will vote either to sustain *** or reverse the order of the Superintendent." Chicago Police Board Rules of Procedure, art. IV(B)(6) (eff. Nov. 1, 1975), *available at* http://www.cityofchicago.org/ content/dam/city/depts/cpb/PoliceDiscipline/RulesofProcedure20150416.pdf. Lesner claims that if the police board only can "either sustain *** or reverse" when the superintendent recommends a 6- to 30-day suspension, due process would require that where the superintendent recommends a suspension of more than 30 days, involving a more significant property interest, the police board should not be permitted to unilaterally increase the discipline recommended by the superintendent. We reject Lesner's interpretation and the dissent's conclusion as conflicting with the rules of procedure and the statutory language.

¶ 31    As noted in the police board's rules of procedure, "[t]he procedures contained in Article IV do not apply to any suspension implemented by the Superintendent of Police which is accompanied by the filing of charges with the Police Board seeking a member's separation or suspension in excess of thirty (30) days." Chicago Police Board Rules of Procedure, art. IV(D) (eff. Nov. 1, 1975), *available at* http://www.cityofchicago.org/content/dam/city/depts/ cpb/PoliceDiscipline/RulesofProcedure20150416.pdf. Thus, the police board has determined that the limitations on its disciplinary authority ("either to sustain *** or reverse") in cases in which the Superintendent recommends a suspension of less than 30 days does not apply to cases in which the Superintendent recommends a suspension of more than 30 days. This squarely comports with the rule of statutory construction that "by employing certain language in one instance and wholly different language in another, the legislature indicates that different results

were intended." *In re K.C.*, 186 Ill. 2d 542, 549-50 (1999). The absence of the phrase "either to sustain or reverse" in cases involving a suspension of more than 30 days, establishes the intent to expand the police board's disciplinary authority in more serious matters, rather than limit it.

¶ 32    Moreover, that same provision of the police board's rules of procedure states that "[r]eview of the suspension implemented by the Superintendent of Police in [excess of 30 days] will be considered in connection with the hearing before the Police Board." Chicago Police Board Rules of Procedure, art. IV(D) (eff. Nov. 1, 1975), *available at* http://www.cityofchicago.org/content/dam/city/depts/cpb/PoliceDiscipline/RulesofProcedure201 50416.pdf. Hence, when determining the appropriate penalty, the police board considers the superintendent's recommended suspension, as it did here, but the police board does not view that recommendation as a limitation on its power to impose discipline. The superintendent's recommendation serves as another factor weighed during the hearing.

¶ 33    Also supporting this interpretation is the police board's explanation of its role in the disciplinary process. A publication on its website, "Allegations of Police Misconduct: A Guide to the Complaint and Disciplinary Process," states that in cases where the superintendent has recommended discharge or a suspension of more than 30 days and the police board finds the officer guilty of one or more charges, the police board "*determines* the penalty after considering the officer's complimentary and disciplinary histories." (Emphasis added.) Chicago Police Board, Allegations of Police Misconduct: A Guide to the Complaint and Disciplinary Process 2 (2015), *available at* http://www.cityofchicago.org/content/dam/city/depts/cpb/PoliceDiscipline/ AllegMiscond201505.pdf; *People v. Crawford*, 2013 IL App (1st) 100310, ¶ 118 n.9 ("This court may take judicial notice of information on a public website even though the information was not in the record on appeal."). As noted, we give the interpretation of the agency charged

with the statute's administration "substantial weight and deference.*" Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 369 (2010). Thus, we defer to the police board's determination that it is not limited to either sustaining or reversing the supervisor's recommended discipline where an officer has been suspended for more than 30 days or been discharged. Although the dissent acknowledges that the police board is an administrative agency that has adopted "more specific procedures that are to be followed after written charges are filed with the board by the Superintendent," it does not address the content of those rules or how they factor into the police board's decision-making role and ignores the deference historically given to administrative agencies charged with enforcing a statute.

¶ 34        Section 2-84-50 of the Chicago Municipal Code, in listing the powers and duties of the superintendent, directs that the superintendent "shall have the power and duty *** to take disciplinary action against employees of the department" and to "discharge [or] suspend *** the employees of the department." Chicago Municipal Code § 2-84-050. And, particularly significant, section 2-84-50 provides that the superintendent's powers and duties are "[s]ubject to the rules of the department and the instruction of the board." *Id*. Hence, the superintendent does not function as the sole authority in disciplinary matters. Further, both the Illinois Municipal Code and the Chicago Municipal Code specify that the police board hold a hearing where the superintendent has "recommended" a suspension of more than 30 days. 65 ILCS 5/10-1-18.1 (West 2012); Chicago Municipal Code § 2-84-050. The word "recommendation" means "a suggestion about what *should* be done." (Emphasis added.) Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/recommendation.        Thus,        by        making        a recommendation, the police superintendent neither obligates the police board to follow a

particular disciplinary result nor impedes the police board from deciding for itself the appropriate discipline.

¶ 35    Digging deeper, we find section 10-1-18.1 of the Illinois Municipal Code and section 2-84-30 of the Chicago Municipal Code attest that the police board has the authority to reject the superintendent's recommendation and impose a harsher penalty. Under section 10-1-18.1, after a hearing, the police board makes "findings and [a] decision" to be "approved by the Board," "certified to the superintendent," and "enforced by the superintendent." 65 ILCS 5/10-1-18.1 (West 2012) (Nearly identical to wording in section 2-84-30 of the Municipal Code.). This language leads to the reasonable conclusion that after the superintendent makes a recommendation, the police board conducts its own hearing and has authority to make a decision about the appropriate discipline. Any other interpretation would obviate the need for a hearing before the police board.

¶ 36    One could argue that the hearing determines only if the recommended suspension is too harsh rather than not harsh enough, but the remainder of the Code provisions refutes that assertion. Both the Illinois Municipal Code and the Chicago Municipal Code require a majority vote by members of the police board for "any disciplinary recommendation *or action*." (Emphasis added.) 65 ILCS 5/10-1-18.1 (West 2012); Chicago Municipal Code § 2-84-030 (amended Sept. 8, 2011). When interpreting a statute, "each word, clause and sentence *** must be given a reasonable construction, if possible, and should not be rendered superfluous." *Gillespie Community School District No. 7 v. Wight & Co.*, 2014 IL 115330, ¶ 31. Limiting the police board to the superintendent's "disciplinary recommendation" renders the word "action" in both provisions superfluous. A reasonable construction of the words of the statute and ordinance give the superintendent authority to recommend discipline and the police board authority to hold

a hearing, make its own findings of fact, and issue a decision, which the superintendent is charged with enforcing. Although the police board may accept the supervisor's or the hearing officer's recommendation, this does not preclude the police board from rejecting the recommendation and taking "disciplinary action" that imposes a more onerous penalty or a lesser penalty than the one recommended.

¶ 37    Lesner contends that section 2-84-50 of the Chicago Municipal Code also gives the superintendent extensive power to administer and organize the police department. He argues the superintendent as the "chief executive officer" of the department and an "expert" in police matters, can best judge the effect of a disciplinary act on the morale of the entire force and thus the authority to discipline vests in that position rather than the police board. Lesner suggests that a decision by the police board to disregard the recommended discipline could have an adverse effect on the superintendent's authority. While the superintendent of police properly has broad authority in the functioning of the department and in taking disciplinary action against department employees, that authority is not absolute, but has been expressly limited in that it is "[s]ubject to *** the instruction of the board." Chicago Municipal Code § 2-84-050. And in cases involving a suspension of more than 30 days, the police board has been granted authority to take disciplinary action after holding a hearing and taking into account the superintendent's recommendation. In this way, those disciplinary situations of a more substantial, complex, or nuanced nature receive a second look from a presumably independent entity that will, in fashioning the appropriate discipline, protect the officer's due process rights while also taking into account the best interests of the public. Further, Lesner fails to acknowledge how a police board's decision to impose a lesser disciplinary sanction, which he deems acceptable, would not pose the same problem of undermining the superintendent's authority.

¶ 38     At oral argument, Lesner's counsel suggested that his client was unfairly surprised because the police board had never previously exercised its authority to impose a harsher penalty than had been recommended by the superintendent. He also asserted that the past practice of the police board has been to either affirm or lessen the superintendent's recommended discipline, and that deviating from this practice would eliminate police officers' certainty in the disciplinary process. First, Lesner was not blindsided by the police board's decision to increase the penalty. When discussing the stipulation, the hearing officer specifically advised Lesner that the police board "feels it can increase or decrease or reduce that 60-day penalty." So, he received notice that the police board might impose a harsher penalty. Moreover, an officer's expectation that the police board would rubber stamp the superintendent's recommendation is not supported by the Illinois and Chicago Municipal Codes and furnishes no statutory basis for finding that the police board does not have authority to deviate from that recommendation.

¶ 39     Also irrelevant is that the police board might not have previously imposed discharge after the superintendent recommended a suspension of 30 or more days. At oral argument, of the three types of disciplinary actions–suspension, removal, and discharge–neither counsel could recall a case involving removal, which leaves suspension and discharge as the only penalty the superintendent or the police board have pursued. Nor did the counsel recall a case in which the police board departed from a discharge recommendation in favor of suspension, an outcome at the police board's disposal as well. That the police board has authority conferred on it by the Illinois and Chicago Municipal Codes but may not have previously used the power in the past is of no consequence, except as a demonstration of the police board's failure to effectuate all of its statutory power.

¶ 40    Thus, the police board acted within its statutory authority when it rejected the superintendent's suspension recommendation and ordered discharge.

¶ 41                    Police Board's Decision to Discharge Lesner

¶ 42    Next, Lesner contends we should reverse the police board's decision as arbitrary, unreasonable, and unrelated to the needs of the department. Specifically, he maintains that the police board's finding that his "failure to reasonably secure his weapon led directly to Weiland's death" does not address whether his actions proximately caused Weiland's death. Lesner asserts the police board erred in finding he was the cause because suicide qualifies as an independent, intervening act, and he had no idea Weiland suffered from mental illness. He also asserts that the police board failed to value as mitigating evidence (i) his exemplary record both before and after his incident, and (ii) the fact that the superintendent permitted him to continue serving as an officer for several years after Weiland's death.

¶ 43    We follow a two-step analysis when reviewing an administrative agency's decision regarding discharge. *Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n*, 85 Ill. 2d 547, 550 (1981). First, we determine if the administrative agency's findings of fact are contrary to the manifest weight of the evidence. *Id*. In doing so, we treat the findings and conclusions of the administrative agency as *prima facie* correct. *Kappel v. Police Board*, 220 Ill. App. 3d 580, 588 (1991). Second, we determine if the findings of fact provide a sufficient basis for the police board's conclusion that cause for discharge existed. *Crowley v. Board of Education of City of Chicago*, 2014 IL App (1st) 130727, ¶ 29. The police board's decision will not be overturned unless shown to be arbitrary and unreasonable, or unrelated to the requirements of the service. *Siwek v. Police Board*, 374 Ill. App. 3d 735 (2007).

¶ 44    The first prong–whether the manifest weight of the evidence supports the police board's decision to discharge–has been met. Lesner admitted to the facts underlying his discipline and has not assigned error to any of the police board's factual findings. He does, however, contend that the police board's decision to discharge him was arbitrary and should be reversed.

¶ 45    A police officer may not be discharged without cause. 65 ILCS 5/10-1-18(a) (West 2012). "Cause" has been defined as " 'some substantial shortcoming which renders [the employee's] continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his [discharge].' " *Walsh v. Board of Fire & Police Commissioners*, 96 Ill. 2d 101, 105, (1983) (quoting *Fantozzi v. Board of Fire & Police Commissioners*, 27 Ill. 2d 357, 360 (1963)). Because the police board, and not the reviewing court, stands in the best position to determine the effect of an officer's conduct on the department, the reviewing court gives the police board's determination of cause heavy deference. *Valio v. Board of Fire & Police Commissioners*, 311 Ill. App. 3d 321, 330-31 (2000). We may not consider whether we would have imposed a more lenient disciplinary penalty. *Krocka v. Police Board*, 327 Ill. App. 3d 36, 48 (2001).

¶ 46    Based on our review of the record and the police board's rationale for its decision to discharge Lesner, we cannot say the police board's decision was unreasonable, arbitrary, or unrelated to the requirements of service. Safety precautions in handling, safekeeping, cleaning, transporting, and firing his or her weapon is a basic responsibility of every police officer. Although the officer may be off duty at the time of the improper use of his or her weapon, case law does not draw on this distinction in regard to the seriousness of the misconduct. See *Davenport v. Board of Fire & Police Commissioners*, 2 Ill. App. 3d 864 (1972). And that the

discharge arose from a single incident does not "preclude a discharge for cause assuming that the conduct is of a nature that sound public policy would recognize as good cause for no longer occupying the position of police officer." *Humbles v. Board of Fire & Police Commissioners*, 53 Ill. App. 3d 731, 734 (1977). An officer's discharge for misuse of a weapon often involves improper brandishing of a gun, but not always. For instance, in *Oliver v. Civil Service Comm'n*, 80 Ill. App. 2d 329 (1967), a prison employee was discharged for carrying a weapon outside of work in violation of an ordinance and prison rules.

¶ 47        As the police board concluded, Lesner ignored several department rules and exhibited a complete lack of judgment by purchasing alcohol while in uniform for a woman who was distraught over a domestic dispute, using his position to further a personal relationship with her, and leaving a loaded gun in her presence, which resulted in her death. While Weiland's bipolar disorder was a contributing factor, the police board did not err in finding that Lesner's misconduct "led directly to her death." Thus, given the expectations and responsibilities of a police officer, particularly a sergeant, we cannot find that the police board's decision to discharge him was arbitrary, unreasonable, or unrelated to the requirements of the service. As the trial court aptly put it, "[T]he Board held Lesner responsible, as did Lesner himself, not for the ultimate result, but for the penultimate which was caused by Lesner's errors in judgment."

¶ 48        Lesner contends that although the police board is deemed to be in a better position than a reviewing court to determine the effect of an officer's conduct on the police department, the superintendent has a better position than the police board and the police board should have deferred to the superintendent's decision to seek a suspension rather than a discharge. Furthermore, Lesner asserts the police board should have taken into account the superintendent's decision to permit him to continue to work for two years after Weiland's death and then to return

to active duty after serving a 30-day suspension. Lesner asserts this is evidence that the superintendent believed his continued employment would not affect the discipline, efficiency, or operation of the department.

¶ 49 We note that Lesner cites no authority for his assertion that the superintendent is in a better position than the police board to determine the appropriateness of the discharge and the numerous cases hold contrary to Lesner's view. See, *e.g.*, *Valio v. Board of Fire & Police Commissioners*, 311 Ill. App. 3d 321, 330-31 (2000); *Sangirardi v. Village of Stickney*, 342 Ill. App. 3d 1, 18 (2003). Moreover, Lesner's reliance on the superintendent's decision to permit him to continue working does not preclude eventual discharge. *Kappel*, 220 Ill. App. 3d at 595. Given the deference to the police board in determining appropriate discipline, the superintendent's decision to permit Lesner to continue working as a police officer affords no basis for reversing the police board's decision. Further, contrary to Lesner's contention, the police board did consider the superintendent's recommended 60-day suspension and opted not to follow it.

¶ 50 Finally, Lesner contends the police board failed to entertain his "truly impressive" work record both before and after Weiland's death. The record belies his assertion. The police board did hear testimony about Lesner's work history and summarized his "distinguished record" in its findings and decisions. But, the police board need not give mitigating evidence undue weight to unsettle its discharge decision. Discharge where mitigating evidence was presented is not *per se* arbitrary or unreasonable. *Siwek v. Police Board*, 374 Ill. App. 3d 735, 738 (2007).

¶ 51 Affirmed.

¶ 52 PRESIDING JUSTICE PIERCE, dissenting.

¶ 53    This case represents more than "a rare instance where the police board asserted its authority by disagreeing with the superintendent." This case, in my judgment, marks an unprecedented exercise of authority that is specifically reserved in the superintendent: the power to recommend an officer's discharge. I disagree with the majority's conclusion that the board has the authority to impose an order of discharge where the superintendent has recommended a period of suspension. Rather than viewing the board as a "bureaucratic rubber stamp," I view the ordinance creating the office of superintendent and the police board as an expression of the Chicago city council that the ultimate penalty of discharge vests in the superintendent, and in recognition of the due process rights of police personnel, discharge can only be effectuated upon the recommendation of the superintendent and the concurrence of the police board. Unless and until the ordinance is amended, the board has overstepped its authority in this case. I respectfully dissent.

¶ 54    Fifty-six years ago, the Chicago police department was rocked by the Summerdale scandal leading to the appointment of O.W. Wilson to the new position of superintendent of police and the creation of a police board. Chicago City Council, Journal of the Proceedings of the City Council, at 2057-63 (Mar. 2, 1960). In creating the office of superintendent, the ordinance specifically provided that, subject to instruction of the board, the "Superintendent shall have the power and duty *** (3) to make appointments *** and to take disciplinary actions" and "(4) to appoint, discharge, suspend or transfer the employees." *Id.*; Cook County Ordinance § 11-6, at 2060 (approved Mar. 2, 1960). In 1960 the city council did not give the power and duty to discharge to the police board and no city council since has seen fit to grant this power to any entity other than the superintendent. This assumption of power by the board should not be sanctioned by the judiciary. If the power of discharge should be exercised by the board, the

Chicago city council is more than capable of amending appropriate ordinances to effectuate this expression of public policy.

¶ 55    Due process requires that an officer be given notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case. *Pettigrew v. National Accounts Systems, Inc.*, 67 Ill. App. 2d 344, 350 (1966). Section 10-1-18.1 of the Illinois Municipal Code operates to protect police officers from being disciplined or fired without procedural due process. *People ex rel. Paczkowski v. Conlisk*, 38 Ill. App. 3d 106, 114 (1976). A police board's review of a suspension levied by a superintendent serves as a check on the power of the superintendent and satisfies procedural due process requirements. *Kropel v. Conlisk*, 60 Ill. 2d 17, 25-26 (1975). Relevant to this case, and every case of disciplinary action against a police officer, the board's purpose is to protect the procedural due process rights of the officer once charges have been filed against him and a penalty of more than 30 days has been recommended by the superintendent. This serves as a necessary check on the power of the superintendent to discharge.

¶ 56    Here, the board unilaterally declared its authority to order petitioner's discharge, where a suspension was the penalty recommended by the superintendent under section 10-1-18.1 of the Illinois Municipal Code (65 ILCS 5/10-1-18.1(West 2012)) and under section 2-84-030 of the Chicago Municipal Code (Chicago Municipal Code § 2-84-030 (amended Sept. 8, 2011)). Specifically, the Board found:

"In cases in which the Superintendent seeks a penalty of more than 30 days suspension, both the ordinance and the statute provide that: '[u]pon filing of charges for which removal or discharge or suspension of more than 30 days is recommended, a hearing before the police board, or any member or hearing officer designated by it shall be held.' The ordinance and the statute further provide that a majority of the members of the Board 'must concur in the entry of

any disciplinary recommendation or action.' Section 2-84-050 of the Municipal Code adds that the Superintendent's authority to discharge or suspend employees of the Department is 'subject to the rules of the department and the instructions of the board.' These provisions make clear that in cases involving discharges or suspensions in excess of 30 days, the Superintendent's position on the appropriate penalty is only a recommendation to the Board and is not binding upon it. Rather, it is for a majority of the Board to 'concur' in whatever discipline is imposed, and the Superintendent's disciplinary authority is expressly made subject to the instructions of the Board. Accordingly, the Board has the power to instruct the Superintendent to impose any penalty it deems appropriate in the cases in which the Superintendent has recommended a suspension in excess of 30 days."

¶ 57 The board's conclusion that somehow the "power to instruct" morphs into the power "to impose any penalty it deems appropriate" simply does not follow. In my view, the word "instruction," in context, means the superintendent cannot ignore the decision of the board where the board finds the recommended discipline should not be as severe as the superintendent wants. This does not diminish the superintendent's authority. It is consistent with the legislative purpose of providing a review, approval or modification downward of the superintendent's recommendation. Nothing in the statute or ordinance gives the power to discharge exclusively to the board and the board cannot confer this authority onto itself by adopting rules of procedure that expand its authority beyond the authority to approve or disapprove the recommendation made by the superintendent.

¶ 58 The Chicago police department and the police board are not units of local government under Illinois law. See Ill. Const. 1970, art. VII, § 1. The Chicago police department is merely a department in the executive branch of the municipal government of the City of Chicago created

by municipal ordinance. Chicago Municipal Code § 2-84-010 (amended Mar. 31, 2004). The board is likewise a department of the executive branch of the municipal government of the City of Chicago also created by municipal ordinance. Chicago Municipal Code § 2-84-020 (amended Sept. 8, 2011). Neither department was created by Illinois statute and therefore neither the police department nor the board has any legal status apart from the City of Chicago. See *Dr. Martin Luther King, Jr. Movement Inc. v. City of Chicago*, 435 F. Supp. 1289, 1294 (N.D. Ill. 1977) (applying Illinois law to hold that Chicago department of streets and sanitation "is merely an organizational division of the City and does not enjoy independent legal existence"); *Jordan v. City of Chicago, Department of Police*, 505 F. Supp. 1, 4 (N.D. Ill. 1980) (Chicago police department merely a department of the city which does not have separate legal existence).

¶ 59 The powers of an administrative officer or agency are purely statutory, and they only have the powers expressly given to them by statute. See *Lake County Board of Review v. Property Tax Appeal Board*, 119 Ill. 2d 419, 427 (1988). Similarly, an agency does not have broad inherent power beyond a statutory grant. *Champaign County Board of Review v. Property Tax Appeal Board of the Department of Revenue*, 30 Ill. App. 3d 29, 34 (1975). Any action by an administrative agency which exceeds its authority is void. *Chemed Corp. v. State of Illinois*, 186 Ill. App. 3d 402, 410 (1989).

¶ 60 As the majority has stated, the police board's authority is derived from section 10-1-18.1 of the Illinois Municipal Code (65 ILCS 5/10-1-18.1 (West 2012)) and section 2-84-030 of the Chicago Municipal Code (Chicago Municipal Code § 2-84-030 (amended Sept. 8, 2011)). While both of these sections establish required procedures, the rules of procedure adopted by the police board of the City of Chicago enumerate more specific procedures that are to be followed after written charges are filed with the board by the superintendent.

¶ 61    Section 10-1-18.1 and Section 2-84-030 are similarly worded and explain the Board's powers and duties in ensuring that officers faced with certain disciplinary action are afforded procedural due process. Section 2-84-030 is more specific:

"No officer or employee of the police department in the classified civil service of the city whose appointment has become complete may be removed or discharged, or suspended for more than 30 days except for cause upon written charges and after an opportunity to be heard in his own defense by the police board, or any member or hearing officer designated by it." Chicago Municipal Code § 2-84-030 (amended Sept. 8, 2011).

With this legislative right established, the board is charged with hearing "disciplinary actions for which a suspension for more than the 30 days expressly reserved to the superintendent is recommended, or for removal or discharge involving officers and employees of the police department in the classified civil service of the city." Chicago Municipal Code § 2-84-030 (amended Sept. 8, 2011). After a hearing the "findings and decision of the police board *** when approved by said board, shall be certified to the superintendent and shall forthwith be enforced by said superintendent." *Id*. A majority of the board must "concur in the entry of any disciplinary recommendation or action." *Id*.

¶ 62    Only the superintendent is given the express authority to discharge an employee and this sole authority is limited only by the civil service provisions of state statute. The police department, an executive department of the municipal government of the city, is run by the superintendent, the chief executive officer "responsible for the general management and control of the police department and [the superintendent] shall have full and complete authority to administer the department in a manner consistent with the ordinances of the city, the laws of the state, and the rules and regulations of the police board." Chicago Municipal Code § 2-84-040

(amended June 5, 1987). The superintendent, subject to the rules of the department and "the *instruction* of the board," has the *power and duty* "to administer the affairs of the [police] department" and "to take disciplinary action against employees of the department" and "to appoint, *discharge*, suspend or transfer" employees of the department, subject to "the civil service provisions." (Emphases added.) Chicago Municipal Code § 2-84-050(1), (3), (4). The city council specifically and exclusively used the word "discharge" in establishing one of the superintendent's powers and duties. There is no such grant of power or duty vested in the board.

¶ 63        My reading of the ordinance and the code does not specify which department originates the written disciplinary charge. At the very least, custom and practice has long established that it is the superintendent that brings charges and recommends discipline. Depending on the severity of the recommended discipline, it is the board that must approve the final discipline. In fact, there is no authority in the board to initiate charges against an officer. If an officer is deemed unfit by the board, it is powerless, absent the filing of charges with the board by the superintendent, to take any disciplinary action against the officer. Never in its 56 years of existence has the board unilaterally assumed the power to initiate an order of discharge where the superintendent has not so recommended. There is good legislative and practical reason for this: the superintendent is responsible for department operations, efficiency and morale so it should be the superintendent making the disciplinary decision that will further the goals of the department, including employee performance and morale. As established by ordinance, the board may disagree with the recommended discipline of suspension and instruct that a lesser discipline be imposed, however, the board has been given no specific legislative grant of authority to substitute an order of discharge in its stead.

¶ 64    Examining the administrative order in this case, the board correctly recites the legislative grant of authority that requires board concurrence in a disciplinary recommendation or action brought by the superintendent. It is undisputed fact that the superintendent's authority to discharge or suspend is subject to "the instructions of the board." However, the board then proceeds to engage in a classic administrative agency power grab by declaring "a recommendation  to the board is not binding upon it" and "is expressly made subject to the instructions of the Board." Nowhere does the board explain, nor can it, how a provision that contemplates providing due process protection to the employee through an administrative review process and a subsequent concurrence transmitted to the superintendent through "instructions," morphs into a specific and clear grant of authority to the board to discharge. If the city council wanted the board to have this authority it would have so provided. Most importantly, if the board thought it wise, prudent, efficient or necessary for it to have this power, the board or any of its members would have or could have, over the last 56 years, simply requested this specific authority by way of amendment to the municipal code.

¶ 65    An example of a legislative grant of power to a board to impose its own penalties can be found in section 3-7012 of the Counties Code (55 ILCS 5/3-7012 (West 2012)), which deals with the removal, demotion or suspension of deputy sheriffs. This section provides for a hearing "upon written charges filed with the Board by the Sheriff." Notably, this particular section differs from section 10-1-18.1 and section 2-84-30 of the Chicago Municipal Code in that it expressly grants the Sheriff's Merit Board the right to "make a finding of guilty *and order either removal*, demotion, suspension for a period of not more than 180 days, or such other disciplinary punishment as may be prescribed by the rules and regulations of the Board which, in the opinion of the members thereof, the offense merits." (Emphasis added.) *Id*. No such grant of authority

exists here and no such grant of authority can be inferred. If the city council wanted the board to have the power of discharge it would have enacted a provision similar to that given to the Sheriff's Merit Board.

¶ 66      The exclusive express authority of the superintendent to discharge is both acknowledged and ignored by the majority. It is acknowledged when it states that "neither the Illinois nor the Chicago Municipal Codes *expressly* give the board the authority to impose a more severe penalty than the one recommended by the superintendent" (emphasis added) and then ignored when it concludes that the nearly identical language contained in section 10-1-18.1, and section 2-84-30 of the Chicago Municipal Code, grants the board the authority to reject the superintendent's recommendation of suspension and independently impose the penalty of discharge. The fact that the board must make findings and decisions and thereafter concur in a disciplinary recommendation that the superintendent must follow simply does not allow for the conclusions that the superintendent's exclusive power to discharge has somehow been additionally conferred on the board. This is a strained interpretation of the ordinance that I cannot accept.

¶ 67      The majority concludes that it was intended for the board to have "enlarged" disciplinary authority in cases where the recommended suspension is more than 30 days because a similar provision gives the board authority to "sustain *** or reverse the order of the Superintendent" in cases where the recommended suspension was between 6 and 30 days (Chicago Police Board Rules of Procedure, art. IV(D) (eff. Nov. 1, 1975), *available at* http://www.cityofchicago.org/content/dam/city/depts/cpb/PoliceDiscipline/RulesofProcedure201 50416.pdf.). The majority finds that the absence of the phrase "either to sustain or reverse" where a suspension of more than 30 days is recommended demonstrates an intent to give the board independent discharge authority in more serious matters. Glaringly, this is not a legislative

pronouncement: this is a rule promulgated by an administrative agency that, under any legal analysis, cannot grant onto itself more authority than the legislation that created it. To conclude that the board "does not view that recommendation as a limitation on its power" and that the "superintendent's recommendation is just another factor weighed during the hearing" demolishes the superintendent's authority and gives the board exactly what judicial review cannot give: authority that the legislature specifically did not provide. Neither the board nor the majority can identify any clear, specific grant of authority dealing with the power to discharge, other than that given the superintendent, to the police board.

¶ 68        The board's claim that it has an authority that goes beyond the powers expressly granted under section 10-1-1.8 of the Illinois Municipal Code and section 2-84-30 of the Chicago Municipal Code cannot be squared with the plain and unambiguous language of the relevant statute or ordinance under consideration here. Given the clear language of sections 10-1-18.1 and 2-84-30, I disagree with the majority that the board has the power to go beyond deciding whether the officer is guilty of the charges brought by the superintendent and the penalty recommended by him. See *Hines v. Department of Public Aid*, 221 Ill. 2d 222, 230 (2006) (court must enforce statute as written and may not annex new provisions or substitute different ones, or read into the statute exceptions, limitations or conditions which the legislature did not express).

¶ 69        I also take issue with the majority's statement that petitioner's argument "views the Chicago police board as nothing more than an extension of the police superintendent's disciplinary authority." This dramatic overstatement conveniently denigrates petitioner's compelling argument in an attempt to make the majority's conclusion appear to be the expected result where an officer challenges an action by an "autonomous" police board. Hyperbole aside, in my judgment petitioner has the better position: only the superintendent is afforded the sole

disciplinary authority to recommend discharge, subject to board approval. This is an express grant of authority that has been codified and accepted without challenge by the board for over 56 years.

¶ 70    I also find it particularly troubling that the city corporation counsel represented the superintendent's position before the police board yet took the opposite position when it represented the police board on administrative review. The superintendent was represented by the city corporation counsel when he filed charges seeking a suspension that required a hearing and consent of the police board. Throughout these proceedings the department's counsel argued on behalf of the superintendent, the chief executive municipal officer responsible "for the general management and control of the police department," pursuant to his "full and complete authority to administer the department." The superintendent, through the corporation counsel, argued that a period of suspension was the proper discipline, yet, when the board, for the first time in 56 years entered an order of discharge over the superintendent's recommendation, it was the corporation counsel defending the board and its unique position in direct opposition to the position it advocated in the same proceeding on behalf of its former client the superintendent. This conflict of interest is another first and should not be allowed or countenanced.

¶ 71    There is a reason that this is "a case of first impression": no police board has ever taken the position that it has the authority to order discharge where the superintendent recommends a substantial suspension. The power and duty to discharge is solely and specifically given to the superintendent, and discharge may only be accomplished after a hearing and affirmative approval of the board.

¶ 72    This decision, unless addressed by the city council, will diminish the superintendent's authority and frustrate his exercise of discretion and judgment in deciding appropriate employee

discipline consistent with maintaining department efficiency and morale. For example, if this opinion stands, in those cases where a substantial suspension is warranted, and discharge is not appropriate, the superintendent will not move for more than a 30-day suspension because of the risk that the board will disagree and order discharge. Absent specific city council action to negate this decision, there will be no limit on the board undermining the disciplinary authority of the superintendent and order discharge where the superintendent, in his professional judgment and pursuant to his specific power and duty, decides a lengthy suspension is the appropriate result.

¶ 73        I respectfully dissent.